CITY OF NEW YORK, Respondent, *v.* LEO PANZIRER, Respondent, and MANUFACTURERS HANOVER TRUST COMPANY, INTERVENOR-Appellant.

First Department, May 11, 1965.

*Joseph J. Ackell* of counsel (*Simpson Thacher & Bartlett,* attorneys), for intervenor-appellant.

*Jacob Friedes* of counsel (*Stanley Buchsbaum, Louis Pollack* and *Morris Sutton* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for City of New York, respondent.

BREITEL, J.   The issue is whether a judgment creditor who has served a third-party information subpœna and restraining notice in judgment enforcement proceedings (but has not yet obtained a turnover order) is entitled to priority over a judgment creditor who subsequently procures a levy under an execution.   The determination of the issue depends upon the applicability and effect of CPLR 5234 (subd. [c]).   The dispute is between the City of New York, which served the information subpœna and restraining notice under CPLR 5222 and 5224, and thereafter instituted a turnover proceeding pursuant to CPLR 5227, and the Manufacturers Hanover Trust Company, which obtained the subsequent execution levy.   The third party or garnishee holds an escrow fund otherwise belonging to the judgment debtor Mamet in the amount of $923 pursuant to a written agreement for the sale of the judgment debtor's business.

The city's judgment ($1,129.51) was obtained for sales and business taxes owed by the judgment debtor Mamet; the bank judgment ($1,308.49) was obtained for the balance due from Mamet arising from an indebtedness to the bank. The third-party escrowee was the judgment debtor's lawyer in the sale of the judgment debtor's business. The bank entered its judgment August 10, 1963. The city entered its warrant or judgment October 21, 1963. The escrowee, Mr. Panzirer, was served by the city with the information subpœna and restraining notice on November 19, 1963. The city instituted the present special proceeding for a turnover order on January 22, 1964. Thereafter and not until February 5, 1964 did the bank issue its execution and obtain a levy by service upon the escrowee-garnishee.

In short, the bank recovered the earlier judgment but was slow in pursuing its remedies against the escrowee-garnishee, although it had previously received $77 from him and therefore knew of the existence of the escrow fund. The city, on the other hand, had obtained its judgment later but moved expeditiously to recover the sum held in escrow. It chose the slower information subpœna procedure rather than that of execution levy, presumably because without the information thus obtained it could not be certain that an execution would be effective. The result, however, was that it had not obtained a delivery or turnover order before the bank had levied under its execution.

Special Term held that because of the city's diligence, and in reliance on precedents which antedate CPLR, the city was entitled to priority. It overruled the bank's contention that CPLR had established a definite priority among judgment creditors (including levying execution creditors and those resorting to enforcement proceedings in the nature of the former supplementary proceedings under the Civil Practice Act) in which only delivery and turnover orders and receiverships would rank with executions levied in determining the order of priority.

The legislative history of CPLR 5234 (subd. [c]), an entirely new provision in the practice statutes, establishes that the order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies and the filing of orders for turnover or receiverships, as the case may be. The mere service of restraining notices under CPLR 5222 in connection with subpœnas issued pursuant to CPLR 5224 does not invoke standing in the ranking of priorities. In consequence, the judgment directing turnover to the city of the moneys held by the escrowee-garnishee should be reversed and judgment entered directing turnover of such sum to the intervenor bank, pursuant to the levy made upon the escrowee-garnishee.

Under the Civil Practice Act there was no express provision for priority as between executions levied and orders for the delivery of personal property (Civ. Prac. Act, §§ 680–683; N. Y. Legis. Doc., 1959, No. 17, Third Preliminary Report of Advisory Comm. on Practice and Procedure, pp. 731–795). This occasioned great confusion, and the courts created varying rules (see Third Preliminary Report, *supra,* pp. 731–733). It had been determined, however, that a restraining provision in a third-party subpœna in supplementary proceedings issued pursuant to section 781 of the Civil Practice Act was equivalent to an equitable lien available in the old equity practice. The subpœna service was therefore held entitled to priority over a subsequent execution levy (*Matter of Wickwire Spencer Steel Co.* v. *Kemkit Scientific Corp.,* 292 N. Y. 139, 142).

There is no doubt that, in the development of the several drafts of what was to become the CPLR, effort was made to rationalize the priority order among the several classes of judgment creditors. While the precise proposals first suggested in the Third Report (*supra*) were not adopted, the final drafts were still designed to achieve the goal of a relatively simple, almost mechanical, statutory basis for determining priorities (Third Preliminary Report, *supra,* § 61.14, p. 308; N. Y. Legis. Doc., 1961, No. 15, Fifth Preliminary Report, rule 5263, subd. [c], pp. 636–637; N. Y. Legis. Doc., 1962, No. 8, Sixth Report, § 5234, subd. [c], p. 504; Practice Commentary by Professor David D. Siegel, McKinney's Cons. Laws of N. Y., Book 7B, CPLR 5234, pp. 182–184). In both the Fifth and Sixth Reports (*supra*) it was stated with respect to the draft provision: "This provision is new. It is intended to clarify present law. It indicates that priority is not gained merely by serving a subpœna on a garnishee, but is only gained when property is ordered delivered or paid or transferred to a receiver, and only as to that particular property. The last sentence is needed to prevent a creditor who secures such an order from sitting on its rights to the detriment of another creditor." (Fifth Preliminary Report, p. 637; Sixth Report, p. 504.)

The Fifth and Sixth Report draft provisions are identical with the present subdivision (c) of CPLR 5234 which reads as follows: "Priority of other judgment creditors. Where personal property or debt has been ordered delivered, transferred or paid, or a receiver thereof has been appointed by order, or a receivership has been extended thereto by order, *and the order is filed before the property or debt is levied upon, the rights of the judgment creditor who secured the order are superior to those of the judgment creditor entitled to the proceeds of the*

*levy.* Where two or more such orders affecting the same interest in personal property or debt are filed, the proceeds of the property or debt shall be applied in the order of filing. Where delivery, transfer, or payment to the judgment creditor, a receiver, or a sheriff or other officer is not completed within sixty days after an order is filed, the judgment creditor who secured the order is divested of priority, unless otherwise specified in the order or in an extension order filed within the sixty days." (Emphasis supplied.)

While there is no express reference to the restraining notices authorized by CPLR 5222, it is clear enough from the language of the subdivision, and especially in the light of its legislative history, that the subdivision was intended to encompass the range of priorities, to make the ranking of priority statutory, and to eliminate both decisional variations and difficult factual tests based upon the measure of diligence exerted by members of the different classes of judgment creditors. Reference to the many decisions and commentary materials cited in the study annexed to the Third Report makes this goal evident. The only discordant note is the reference in the quoted draftsman's explanation (*supra*) that the draft is "intended to clarify present law". This suggests less than a marked change in the law, but the sentence following unequivocally describes the change in the law. On any view, the goal of having the priorities among judgments in the statute without decisional exceptions and variations should not be disregarded.

The result, then, is that in order for a judgment to attain status in the ranking of priorities there must either be a levy, an order directing delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority. In given situations, as in this case, the effect may be that a less diligent creditor may prevail over a more diligent one, but the values of certainty and ease of determination of priorities are better achieved. Moreover, once the practice is settled, the judgment creditor, except in the rarest of situations where he lacks information, will be able to establish his priority, and disputes about priority will be relatively easily resolved. Total lack of information will be rare, for the judgment creditor must have known enough to serve the information subpoena and restraining notice on the third person.

These conclusions do not deprive restraining notices of all usefulness, as the city argues. The restraining notices serve the purpose of preventing the third person or garnishee from surrendering the debtor's assets pending obtaining of a turnover

order. It simply means that the restraining notices are no longer effectual to affect priorities, as was the case under the decisional precedents under the Civil Practice Act.

These conclusions are in consonance with those reached in a number of cases at nisi prius (*Matter of Fisher & Co.* v. *Bar Spa. Automatic Mach. Co.*, 43 Misc 2d 821; *Meadow Brook Nat. Bank* v. *Federal Ins. Co.*, N. Y. L. J., Sept. 1, 1964, p. 10, col. 5; *Matter of H & H Poultry Co.* v. *Lafayette Nat. Bank*, 45 Misc 2d 480; *Matter of Graze* v. *Bankers Trust Co.*, 45 Misc 2d 610). The commentators are also in agreement with the foregoing conclusions (6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5234.18; Practice Commentary by Professor David D. Siegel, *loc. cit. supra*; see, also, Supplementary Practice Commentary by Professor David D. Siegel [McKinney's Cons. Laws of N. Y., Book 7B, CPLR 5234, pp. 23–24, 1964 Supp.]).

Since the bank's judgment is in excess of the amount levied upon there is a deficiency still due the bank on its judgment and there can be no surplus available to the city under its turnover application.

Accordingly, the judgment directing payment to the City of New York should be reversed, on the law, without costs or disbursements to any party, and judgment directed providing for the payment of such sum to intervenor-appellant in accordance with the levy of the execution caused to be issued by it.

BOTEIN, P. J., RABIN, EAGER and STEUER, JJ., concur.

Order and judgment unanimously reversed, on the law, without costs or disbursements to any party, and judgment directed providing for the payment of such sum to intervenor-appellant in accordance with the levy of the execution caused to be issued by it. Settle order on notice.