PRINCETON BANK AND TRUST COMPANY, Appellant, v SAMUEL M. BERLEY et al., Respondents; TENGRAN COMPANY, Intervenor-Respondent.

Second Department, May 23, 1977

*Bressler, Meislin & Lipsitz (Jonathan Director, Alan D. Plotkin* and *Meryl Lynn Unger* of counsel), for appellant.

*Tenzer, Greenblatt, Fallon & Kaplan (Edward L. Sadowsky* and *Steven A. Herman* of counsel), for intervenor-respondent.

HOPKINS, J. P. This appeal essentially involves the priority of the liens of two judgment creditors of one Samuel M. Berley in attaching the latter's interest in partnerships whose assets include the fee in certain lands improved by shopping centers in Queens County. Two of the three deeds conveying the lands named Berley and one Morton Pickman as grantees, without stating the nature of their interests. On July 28, 1975 the intervenor, the Tengran Company (Tengran), entered a judg-

ment for $1,003,521.28 against Berley in Nassau County, based upon his confession of judgment, and docketed it in Queens County two days later. Thereafter, on August 15, 1975, the appellant, Princeton Bank and Trust Company (Princeton), entered a judgment for $101,346 in Nassau County against Berley, based upon the latter's nonpayment of a promissory note.

Princeton claims priority over Tengran's judgment. By this proceeding, commenced November 14, 1975, pursuant to section 54 of the Partnership Law, it seeks a charging order on Berley's partnership interests in the shopping centers and the appointment of a receiver. On August 13, 1975, prior to the institution of Princeton's proceeding, Tengran (under the mistaken impression that Berley's interest in the lands improved by the shopping centers was that of a tenant in · common) delivered an execution with "notice to garnishee" to the Sheriff. In fact, the execution commanded the Sheriff to satisfy the judgment "out of the real and personal property of the * * * judgment debtor." The "notice to garnishee" portion was addressed to Berley himself, stating that "you are indebted to the judgment debtor * * * or in possession or custody of property not capable of delivery in which the judgment debtor has an interest, including * * * the following specified debt and property: The real property located in the County of Queens which is described in the metes and bounds descriptions attached to this execution" (the properties so described were apparently the lands on which the shopping centers were located). The Sheriff took no action on Tengran's execution, other than to advertise a sale of the properties, scheduled for December 10, 1975, by notice dated September 18, 1975.

In its proceeding, which was returnable December 1, 1975, Princeton alleged that its judgment remained unsatisfied and that Berley had specified interests in six named partnerships, including the shopping centers in Queens County located on the lands specified in Tengran's execution. Tengran was not named as a party.

Pickman, a party to the Princeton proceeding, submitted an affidavit in which he stated that he was a general partner, together with Berley, in the named partnerships, and he attached a copy of the notice of Sheriff's sale to be held as a result of the execution under Tengran's judgment.

Princeton thereupon moved (within its pending proceeding

under the Partnership Law) to vacate Tengran's execution and to set aside any sale; it claimed that the execution was void on the ground that a judgment creditor "may not execute against partnership property where it has a judgment against one of the partners individually" and that "the only procedure which can be followed is under Section 54 of the Partnership Law, as Petitioner has done here."

Tengran responded by asserting that it had priority because "Berley appears to have title to the real property in issue as tenant-in-common. The property, therefore, is not owned by partnerships". Further, it asserted that (assuming the real properties were assets of partnerships) "CPLR 5234 (b) grants a priority on execution against personal property (such as a partnership interest) to the judgment creditor who first delivers an execution to the sheriff of the county in which the personal property is located", and that the execution delivered to the Sheriff's office on August 13, 1975 was "an execution against *all* of the property of Berley in that county, including, *but not limited to,* real property" (emphasis in original).

Princeton's reply requested the court to temporarily enjoin the Sheriff's sale and conduct a hearing to determine, *inter alia,* whether the real properties were owned by Berley and Pickman individually, or as partners. This request was granted by Special Term by an order dated December 9, 1975, and a hearing was directed to be held on December 22, 1975.

On December 10, 1975 Tengran delivered a new "execution with notice to garnishee" to the Sheriff; this time the named garnishee was Morton Pickman. On the following day a deputy sheriff served the execution on Pickman at his stated office address by handing it to Pickman's attorney.

On December 12, 1975 Tengran moved for leave to intervene in the pending proceeding under section 54 of the Partnership Law. On December 17, 1975 Princeton (still in the context of the section 54 proceeding) moved to set aside Tengran's judgment on the ground that the underlying affidavit in support of the confession of judgment, because of incompleteness and mathematical inaccuracies, failed to comply with CPLR 3218. The motion for leave to intervene was orally granted on March 2, 1976, the day of the hearing, and the sufficiency of the confession of judgment was accepted as an issue at the hearing.

By a decision dated July 13, 1976, Special Term held that (1) the affidavit of confession underlying the Tengran judgment

did not violate CPLR 3218; (2) on the facts presented to it, including admissions made by Berley, his interest in the properties was that of a partner and not of a tenant in common; (3) the charging order procedure set forth in section 54 of the Partnership Law was not the exclusive remedy for placing a lien on a judgment debtor's interest in a partnership; (4) an interest in a partnership is subject to garnishment pursuant to paragraph 3 of subdivision (c) of CPLR 5201; and (5) CPLR 5234 (subd [c]) gives priority to a judgment creditor who has not issued execution (such as Princeton) where "a receiver * * * has been appointed by order * * * and the order is filed before the property or debt is levied upon", and such was not the case herein.

Princeton, in addition to contesting the conclusions of Special Term (except, of course, for the finding that Berley's interest in the real property was that of a partner), contends that Tengran had never validly levied in that (a) the August 13, 1975 execution was of no effect, since it did not name any partner of the judgment debtor as the garnishee (as required by CPLR 5201), nor was any such partner served by the Sheriff, and (b) since the December 11, 1975 levy was made after the original return date of the motion to charge the debtor's interest under section 54 of the Partnership Law, it should be deemed junior to the section 54 proceeding.

We affirm. Tengran's rights are superior to the claim of Princeton.

I

### THE THRESHOLD ISSUE OF THE SUFFICIENCY OF THE AFFIDAVIT OF CONFESSION

The affidavit of confession states: "3. This confession is for a debt justly due to the plaintiff arising from the following facts: Pursuant to the provisions of that certain Articles of Partnership of Lake Shore Park Associates dated January 1, 1971, the plaintiff and I each agreed to be liable for one-half of (i) the difference between the sum of $2,800,000 and the permanent first mortgage obtained on the partnership property; (ii) payment of all liabilities and obligations of the partnership in connection with obtaining and closing the $2,800,000 permanent first mortgage; and (iii) all liabilities and obligations of the partnership in connection with the construction, completion and financing of existing improvements on the partner-

ship property after application of the $1,372,000 contribution to partnership capital by Lake Shore Joint Venture to the payment of such liabilities and obligations. As of March 31, 1975, plaintiff had advanced on my behalf towards the construction, completion and financing of existing improvements on the partnership property the aggregate amount of $982,019.61. In addition through March 31st, 1975, the plaintiff has incurred bank interest charges on the aforesaid amount in the amount of $77,524.46. Accordingly, as of the date hereof I am justly indebted to the plaintiff in the total sum of $1,319,519.61, no part of which has been paid except the sum of $336,566, leaving a balance justly due and owing to the plaintiff of $982,019.61, together with interest thereon at 7-½% per annum from April 1, 1975".

CPLR 3218 (subd [a]) provides that "a judgment by confession may be entered * * * upon an affidavit executed by the defendant * * * 2. if the judgment to be confessed is for money due or to become due, stating concisely the facts out of which the debt arose and showing that the sum confessed is justly due or to become due".

Princeton contends that there were material omissions and errors in the affidavit, although it concedes that there was no underlying fraud or collusion, and implicitly admits that it was not prejudiced. The omissions it points to are: (1) the statement that the debt arose out of a partnership agreement of "Lake Shore Park Associates dated January 1, 1971" when, in fact, it arose as well out of two additional partnership entities and agreements; (2) the document setting forth the Lake Shore Park partnership agreement did not, in fact, provide that Tengran was to make advances on Berley's behalf; the testimony indicated only that Berley had orally agreed to repay Tengran for the latter's disproportionate advances; and (3) the affidavit indicates that the entire amount due was pursuant to the January 1, 1971 partnership agreement, whereas the evidence showed that more than $400,000 had been advanced, and not repaid, prior thereto. The mathematical inaccuracies alleged are: (1) the affidavit refers to Tengran's advance to Berley as $982,019.61 and to interest charges thereon as $77,524.46, which totals $1,059,544.07; nevertheless, the affidavit further recites that the total sum was $1,319,519.61 (although the affidavit states that the sum of $336,566, "which has been paid", is to be deducted from the total); (2) when the stated deduction of

$336,566 from the $1,319,519.61 total is made, the difference is $982,953.61, not the stated difference of $982,019.61; (3) the affidavit states a repayment of $336,566, while the testimony was that the correct figure was $337,500; and (4) the affidavit alleges that "[i]n addition" plaintiff incurred interest charges of $77,524.46, when, in fact, the testimony showed that this sum was included in the amount of $982,019.61. It is to be noted, however, that the final stated amount—$982,019.61—is correct.

Princeton argues that the confessed judgment must be vacated " 'if the affidavit is formally insufficient, whether or not the transaction was in fact bona fide' " (see *County Nat. Bank v Vogt,* 28 AD2d 793, 794, affd 21 NY2d 800; *Wood v Mitchell,* 117 NY 439; *Johnston v Erlander Realty Corp.,* 162 Misc 881). In the cited cases, the judgments were vacated by reason of the lack of detail and the sparsity of supporting statements, such as the failure to state the date and amount of an original loan and the portion repaid, or the failure to separately state the principal and interest, or the bare statement of a "balance due from money loaned."

Although CPLR 3218 calls for no more than a concise statement of the facts, there must be sufficient genuine detail to enable other creditors to investigate the claim and ascertain its validity (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3218:9) and, because of the possibility of fraud, sufficient particularity to place the confessing debtor in jeopardy for perjury *(Wood v Mitchell, supra).*

The statute and its gloss do not require a procrustean dovetailing of detail. Such an overly meticulous reading would place in doubt all but the most exquisitely composed affidavits. It is sufficient that there appears to be an honest recital of enough detail to permit a check of its genuineness and to simplify an investigation of the underlying facts. Errors of detail which are clearly not prejudicial and, as here, are minor, or are balanced by other details which correct them, should not have the devastating effect of invalidating the judgment. The law has long recognized the power of the court to amend a judgment by confession *nunc pro tunc (Mitchell v Van Buren,* 27 NY 300; *Union Bank of Sullivan County v Bush,* 36 NY 631). Accordingly, we find that the affidavit is sufficient.

## II

The relevant portion of section 54 of the Partnership Law (entitled "Partner's interest subject to charging order") provides: "1. On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order, or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of such judgment debt with interest thereon * * * [and] may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require."

Section 52 of the Partnership Law defines a "partner's interest in the partnership" as "his share of the profits and surplus", and declares that such interest is personal property. Subdivision 1 of section 53 states that a conveyance of such interest "merely entitles the assignee to receive * * * the profits to which the assigning partner would otherwise be entitled."

CPLR article 52 is entitled: "Enforcement of Money Judgments." CPLR 5201 is entitled: "Debt or property subject to enforcement; proper garnishee." Paragraph 3 of subdivision (c) thereof states: "Where property consists of an interest in a partnership, any partner other than the judgment debtor, on behalf of the partnership, shall be the garnishee."

It thus appears to be syllogistic that, since the partner's interest is personal property and is assignable, service of a levy on the statutorily named garnishee ("any partner other than the judgment debtor") is an appropriate method of "enforcement of money judgments".

Princeton contends that the legislative history of CPLR 5201, and its predecessor under the Civil Practice Act, demonstrates that that statute was not designed to provide a *post judgment* remedy, and that section 54 of the Partnership Law (which was arguably so designed) demonstrates the legislative intent that that section was to be the exclusive remedy for reaching an interest in a partnership. Princeton also

contends, in effect, that since the Partnership Law is based upon the Uniform Partnership Act, and since (as stated in the National Conference of Commissioners' Prefatory Note to the Uniform Partnership Act [6 Uniform Laws Ann., p 7]) "[u]niformity of the law of partnerships is constantly becoming more important," we should not take the parochial view of conferring upon the remedy provided in CPLR 5201 a status equal to that of section 54 of the Partnership Law. Princeton further argues that a charging lien is less disruptive of the partnership's affairs than is an execution on a partner's interest.

The acceptance of Princeton's interpretation of the statutes would create the anomaly that an assignable item of personal property (Partnership Law, § 53)—a "share of the profits and surplus" (Partnership Law, § 52)—would not be subject to levy. No issue of public policy arises, since a levy requires only that moneys which would otherwise be paid to the debtor-partner as his "share of the profits" should be paid to the Sheriff instead. We do not see how this outcome is more disruptive to the partnership's business affairs than is the charging lien and receivership authorized by section 54 of the Partnership Law. But beyond this view is our aversion to declare (as argued by Princeton) that an integral part of CPLR 5201 does not mean what it plainly says and should thus be judicially nullified. We decline to make an interpretation which runs counter to the language of CPLR 5201, and we are not pursuaded that section 54 of the Partnership Law represents the exclusive method of levy upon a partner's interest.

## III

### WHETHER TENGRAN'S COLLECTION PROCEDURES WERE PROPER AND TIMELY

(a) As to the August 13, 1975 execution.

Tengran issued execution on August 13, 1975, pursuant to which the Sheriff published notice of sale of "the right, title and interest which Samuel M. Berley, the judgment debtor, had * * * in and to the following property"; the execution and the notice referred to three parcels. The record supports Special Term's conclusion that, despite the fact that the recorded deeds as to two of the parcels did not describe the status of the two named grantees, Berley and Pickman, *inter*

*se* (see EPTL 6-2.2, subd [a]), their status was in fact that of copartners (see *Matter of City of New York [Allen St.],* 148 Misc 488, 489-490, affd 239 App Div 775). Indeed, Tengran .does not dispute that finding on this appeal. In consequence, the August 13, 1975 execution was of no avail, since the only asset to which the levy could attach was Berley's interest, "his share of the profits and surplus" (Partnership Law, § 52), hence requiring service on Berley's partner, as garnishee.

Tengran cites CPLR 5234 (subd [b]) in support of its asser-tion that the failure of the Sheriff to levy on the August 13, 1975 execution by service upon Berley's partner was of no significance. Subdivision (b), in its prescription of "priority among execution creditors", declares that where there are executions of different judgment creditors, "they shall be satisfied out of the proceeds of personal property or debt levied upon by the officer in the order in which they were delivered." Although Tengran admits that this provision is not directly applicable (since Princeton never delivered any execu-tion to the Sheriff), it argues, in effect, that the wording implies that the date of delivery to the Sheriff, and not the date of the Sheriff's levy, is the critical date. The August 13, 1975 execution, argues Tengran, was directed to all "real and personal property" of the debtor in Queens County and this, so Tengran claims, would cover the debtor's interests in the shopping center partnerships in Queens County.

We conclude, that, even if subdivision (b) of CPLR 5234 were relevant, it would afford no basis for priority to Tengran. Although the language refers to the time of delivery of the *execution* and not the time of the *Levy* by the sheriff, it is also clear that the execution must be accompanied by proper instructions so that the sheriff can levy expeditiously on the assets of the debtor thus described.

Here, the failure to levy pursuant to the August 13, 1975 execution occurred not because of delay, misfeasance or non-feasance of the Sheriff, but rather because Tengran itself directed the Sheriff to proceed against the real property, instead of instructing the Sheriff to levy against the debtor's interest in the partnerships by service on the debtor's partner as garnishee.

(b) As to the December 10, 1975 execution.

CPLR 5234 (subd [c]) entitled: "Priority of other judgment creditors", so far as is here relevant, states: "Where personal property or debt has been ordered delivered, transferred or

paid, or a receiver thereof has been appointed by order, or a receivership has been extended thereto by order, and the order is filed before the property or debt is levied upon, the rights of the judgment creditor who secured the order are superior to those of the judgment creditor entitled to the proceeds of the levy."

Tengran argues that, pursuant to the statute, the December 10, 1975 execution (in proper form in that Pickman, the judgment debtor's partner, was named as garnishee pursuant to CPLR 5201), upon which levy was made on December 11, 1975, entitles it to priority over Princeton, for the levy was made before any order of receivership of the debtor's personal property had been filed. Section 54 of the Partnership Law, under which Princeton had proceeded, permits the court to appoint a "receiver of * * * [the judgment debtor's] share of the profits", and Princeton's prayer for relief requested such appointment. Tengran thus argues that priority among judgment creditors, one of whom has not proceeded by execution but has sought a turnover order, or the appointment of a receiver, depends upon the date of the filing of an *order* to that effect.

*City of New York v Panzirer* (23 AD2d 158) supports Tengran's contention. There, one judgment creditor, the City of New York, after serving a restraining notice upon the debtor's escrowee, commenced a proceeding to obtain a turnover order. Before the order was obtained the other judgment creditor issued its execution and obtained a levy upon the escrowee. The court, per Mr. Justice (now Chief Judge) Breitel, referring to CPLR 5234 (subd [c]) stated (p 162):

"On any view, the goal of having the priorities among judgments in the statute without decisional exceptions and variations should not be disregarded.

"The result, then, is that in order for a judgment to attain status in the ranking of priorities there must either be a levy, an order directing delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority. In given situations, as in this case, the effect may be that a less diligent creditor may prevail over a more diligent one, but the values of certainty and ease of determination of priorities are better achieved. Moreover, once the practice is settled, the judgment creditor, except in the rarest of situations where he lacks

information, will be able to establish his priority, and disputes about priority will be relatively easily resolved. Total lack of information will be rare, for the judgment creditor must have known enough to serve the information subpoena and re- straining notice on the third person."

Despite the caveat thus stated against "decisional exceptions", Princeton asserts that the *Panzirer* rule is not applicable because, in this case, the competing judgment creditors are already before a court having jurisdiction over a proceeding intended to establish their respective priorities. Princeton contends that *Matter of Robbins* (74 Misc 2d 793) recognizes this distinction.

In *Matter of Robbins* the State Tax Commission and a bank held judgments against the same debtor. Thereafter the debtor's mother died; her will named him as a residuary legatee. Neither judgment creditor had attempted to levy under CPLR article 52 prior to the executor's accounting, which named them as judgment creditors and in which they appeared. The court held that subsequent recourse to article 52 collection proceedings by either judgment creditor would have no effect on the order of priorities. The court said (p 796): "When the executrix instituted the accounting and named the State Tax Commission and Bank of Commerce as judgment creditors who at that time had each served only restraining notices upon the executrix under CPLR 5222, the executrix thereby began a proceeding which submitted the issue of priority upon the factual situation then existing to the court for determination. Both judgment creditors appeared and submitted the issue to the jurisdiction of the court. The funds in the hands of the executrix, at the time the accounting began with filing of the petition and account, thus became subject to disposition as the court might determine according to the situation then existing. It does not seem to the court that either judgment creditor could affect its priority by steps taken after the accounting began and when the assets in the hands of the fiduciary thereby became under constructive custody of the court and subject to ultimate order of the court."

We do not view the "decisional exception" of *Robbins* to be controlling in this case. Here the charging order proceeding pursuant to section 54 of the Partnership Law was not instituted to determine the issue of priority between the judgment creditors. Indeed, Princeton did not name Tengran as a party to the proceeding; it was Tengran which moved to intervene

therein on December 12, 1975, one day *after* the levy on its second execution had been served.

Here, as of early December, 1975, there were infirmities in the collection proceedings of both judgment creditors: Tengran's in that it had not sought levy of an execution upon the debtor's interest in the *partnerships,* and Princeton's in that it had not obtained an order of receivership. The judgment creditors had no quasi-fiduciary relationship toward each other which might have estopped either from perfecting its collection procedure by levy according to the statutorily authorized manner upon Berley's partnership interests (cf. *Metro Burak v Rosenthal & Rosenthal,* 51 AD2d 1003; *Alterman v Chronetics, Inc.,* 55 AD2d 941). Tengran accomplished its levy on December 11, 1975, and to it must go the award of priority.

For these reasons the order and judgment should be affirmed insofar as it is appealed from.

COHALAN, DAMIANI and HAWKINS, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Nassau County, dated September 7, 1976, affirmed insofar as appealed from, with costs to the Tengran Company payable by appellant.