[778 NYS2d 503]

In the Matter of KITSON & KITSON, Respondent, v CITY OF YONKERS et al., Respondents. PETER G. McKIERNAN, Intervenor-Respondent-Appellant, LAWRENCE H. BLOOM, Intervenor-Appellant-Respondent, et al., Intervenors-Respondents. (Proceeding No. 1.)

In the Matter of LAWRENCE H. BLOOM, Appellant-Respondent, v VINCENT STARKEY et al., Respondents. PETER G. McKIERNAN, Intervenor-Respondent-Appellant, et al., Intervenors-Respondents. (Proceeding No. 2.)

Second Department, June 1, 2004

### APPEARANCES OF COUNSEL

*Lawrence H. Bloom*, New York City, intervenor-appellant-respondent pro se in Proceeding No. 1 and appellant-respondent pro se in Proceeding No. 2.

*Thomas F. Liotti*, Garden City (*Peter G. McKiernan*, pro se, of counsel), for Peter G. McKiernan, intervenor-respondent-appellant.

*O'Keeffe & Lindgren, LLP*, White Plains (*Thomas K. Lindgren* of counsel), for petitioner-respondent in Proceeding No. 1.

### OPINION OF THE COURT

GOLDSTEIN, J.

This case involves the claims of competing creditors to $160,000 which the debtor, Peter G. McKiernan (hereinafter the debtor) received in settlement of a federal civil rights action against the City of Yonkers and Vincent Starkey, a City of Yonkers police officer. The creditors in issue on this appeal are (1) the debtor's former wife, Mary Joan McKiernan, and the debtor's minor child, (2) the former wife's divorce attorneys, Kitson, Kitson & Bisesto, LLP (hereinafter Kitson), and (3) the debtor's attorney Lawrence H. Bloom, who in 1998 assumed the debtor's defense against the former wife's efforts, inter alia, to

enforce her judgments against him in the divorce action. At issue here is the priority of their claims pursuant to CPLR article 52.

On September 25, 1996, the debtor stipulated in open court in his divorce action to pay 10% of the "net recovery" from the civil rights action to his wife, and 15% to his son in trust. Net recovery was defined as "after the normal disbursements for the lawsuit, the payment of the attorney's fees and any remaining sums that are paid to anybody." The Supreme Court in the divorce action characterized "net recovery" as "disbursements, the photocopies of documents, physician fees, whatever is an out-of-pocket expense, serving subpoenas, filing fee, that will be taken from the top." The debtor's attorney characterized "net recovery" as "the normal and customary costs involved."

The debtor also agreed to pay Mrs. McKiernan an additional $130,000, consisting of $56,000 in equitable distribution, $15,000 in maintenance arrears, and $59,000 in child support arrears. On June 3, 1997, judgment was entered in Mrs. McKiernan's favor against the debtor for the $130,000. A judgment was also entered against the debtor in favor of Kitson for $120,500 in counsel fees incurred by Mrs. McKiernan in the divorce action.

Pursuant to the terms of the stipulation, the debtor's payments under the $130,000 judgment were allocated to child support arrears first. Mrs. McKiernan acknowledges that she was paid $43,000 pursuant to the judgment, which reduced the child support arrears from $59,000 to $16,000.

In 1998 the debtor retained Lawrence H. Bloom to defend against Mrs. McKiernan's application to hold him in contempt, inter alia, of the 1996 stipulation of settlement. The debtor executed a confession of judgment for $67,990.50 in legal fees owed to Bloom, which was docketed on February 29, 2000.

On December 12, 2000, a jury in the federal civil rights action returned a verdict of $250,000 in compensatory damages and $1,000 in punitive damages. Shortly thereafter, Kitson served restraining notices on the garnishee pursuant to CPLR 5222 on behalf of Mrs. McKiernan for the $130,000 judgment and on its own behalf for the $120,500 judgment. Kitson delivered executions to the Sheriff pursuant to CPLR 5232 (a) to enforce its own judgment for $120,500 on December 22, 2000, and again on March 20, 2001.

On May 1, 2001, the damages verdict in the federal civil rights action was set aside by the federal court. On or about June 27,

2001, Kitson served new restraining notices on behalf of Mrs. McKiernan and on its own behalf. Kitson also delivered another execution pursuant to CPLR 5232 (a) to the Sheriff to enforce its own judgment for $120,500. The Sheriff levied on the execution on July 6, 2001, by serving the garnishee.

On August 8, 2001, the debtor and the City of Yonkers agreed to settle the civil rights action for $160,000. On or about September 28, 2001, Kitson delivered new executions to the Sheriff for the $120,500 judgment in its favor. The Sheriff levied on October 2, 2001.

Mrs. McKiernan claims an execution was delivered on her behalf in October 2001. In November 2001 Bloom sought to enforce the confession of judgment against the debtor for $67,990.50 by serving restraining notices pursuant to CPLR 5222. On or about November 6, 2001, Bloom delivered an execution to the Sheriff against the City of Yonkers which was levied on November 16, 2001.

On or about November 26, 2001, Kitson delivered further executions to the Sheriff on its own behalf which were levied on December 4, 2001. On or about November 28, 2001, Kitson commenced a turnover proceeding pursuant to CPLR 5225 and CPLR 5227 to recover its $120,500. By notice of motion dated December 27, 2001, Bloom cross-moved for leave to intervene in that proceeding and to enforce the confession of judgment.

In December 2001 Mrs. McKiernan submitted an affidavit asking for leave to intervene in the turnover proceeding brought by Kitson. Her attorney asked that the "funds be divided equally between Mr. Kitson's firm and Mrs. McKiernan in order to partially reduce both debts." In April 2002 the debtor moved for leave to intervene and for relief pursuant to CPLR 5239 in the nature of interpleader.

In May 2002 Bloom delivered to the Sheriff a separate execution against Officer Starkey. On or about July 19, 2002, Bloom commenced a separate turnover proceeding to perfect his interests in the settlement and sought consolidation of the two proceedings.

The Supreme Court consolidated the two proceedings and granted leave to intervene to, among others, the debtor and Bloom. The Supreme Court determined that the rights of Mrs. McKiernan to 10% of the debtor's net recovery and the rights of her minor child to 15% of the net recovery "takes priority over any liens of judgment creditors." With respect to the liens of

the judgment creditors, the Supreme Court determined that Kitson had priority over Bloom on the ground that it had "[v]alid restraining notices and executions in place for almost a year at the time Bloom first filed a restraining notice or execution." The Supreme Court further determined that Mrs. McKiernan had waived her priority rights in favor of Kitson. The Supreme Court determined that Mrs. McKiernan could not waive her child's rights, as a result of which 15% of the net recovery was awarded to the child in trust. The remaining proceeds were divided equally between Mrs. McKiernan and Kitson pursuant to their agreement.

We agree with the Supreme Court that Mrs. McKiernan and her minor child, as transferees in 1996 of a total of 25% of the net recovery, had priority over all subsequent levies with respect to that portion of the net recovery (*see* CPLR 5202 [a] [1]). However, while it is true that Kitson repeatedly delivered restraining notices and executions before Bloom delivered his restraining notice and execution against the City of Yonkers, that did not give Kitson priority.

CPLR 5222 (c) provides that leave of the court is required to serve "more than one restraining notice upon the same person with respect to the same judgment or order." A restraining notice may also be extended upon motion pursuant to CPLR 5240, which authorizes a court to "at any time" extend or modify the use of any enforcement procedure. Kitson's service of multiple restraining notices without leave of the court was improper. In any event, service of a restraining notice pursuant to CPLR 5222 gives no priority over other creditors (*see Aspen Indus. v Marine Midland Bank,* 52 NY2d 575 [1981]; *Princeton Bank & Trust Co. v Berley,* 57 AD2d 348 [1977]; *City of New York v Panzirer,* 23 AD2d 158, 160 [1965]).

Executions are delivered to the sheriff and are given priority in the order in which they are delivered to the enforcement officer except that "such executions for child support shall have priority over any other assignment, levy or process" (CPLR 5234 [b]). The executions in issue here were levied pursuant to CPLR 5232 (a), which is applicable to property not capable of delivery (*see Universal Oven Co. v Chase Manhattan Bank,* 79 AD2d 654 [1980]). CPLR 5232 (a) provides that "At the expiration of ninety days after a levy is made by service of the execution, or of such further time as the court, upon motion . . . has provided, the levy shall be void except as to property or debts which have been transferred or paid to the sheriff . . . or as to

which a proceeding under sections 5225 or 5227 has been brought." If a levy is not extended and no steps are taken to perfect the levy by commencement of a proceeding pursuant to CPLR 5225 or CPLR 5227, the levy lapses and becomes void (*see Wordie v Chase Manhattan Bank,* 140 AD2d 435 [1988]).

CPLR 6513 provides that a motion to extend a notice of pendency must be made before the notice of pendency has expired (*see Matter of Sakow,* 97 NY2d 436 [2002]). Civil Practice Act § 922 contained a similar provision for levies. However, with the enactment of the CPLR, that provision was deleted. A motion for an extension of a levy may be made after the levy has expired, since there is no provision in the CPLR prohibiting an extension after the levy has expired (*see* CPLR 5240; *Kalman v Neuman,* 71 AD2d 996 [1979]; *Seider v Roth,* 28 AD2d 698, 699 [1967]; *Amoco Overseas Oil Co. v Compagnie Nationale Algerienne de Navigation,* 605 F2d 648 [1979]).

The Appellate Division, First Department, in *New York State Commr. of Taxation & Fin. v Bank of N.Y.* (275 AD2d 287, 289 [2000]) held that multiple levies were improper since "the only means of extending a levy by service of execution (CPLR 5232 [a]) is by way of motion" and service of multiple levies creates confusion, imposes an unnecessary burden on the garnishee, and prejudices third parties who acquired an interest in the property since the original levy was made. That decision would allow an exception to this general rule for the "service of a second levy after the first has expired" (*New York State Commr. of Taxation & Fin. v Bank of N.Y., supra* at 289).

Although we agree with the general rule set forth in that decision, we respectfully disagree with the conclusion that a new levy could be had after the prior levy expired. There is no statutory basis for such a procedure. Since a motion to extend a levy may be made after the levy has expired, the creditor may move to extend the prior levy, not deliver a new execution to the sheriff (*see* CPLR 5232 [a]). In determining an application for an extension the court should consider the intervening interests of third parties.

Prior to commencing a turnover proceeding, Kitson was responsible for multiple levies. Kitson did not move to extend its levies. Instead, it resorted to self help by delivering new executions to the Sheriff four times. Under the circumstances, its levies were improper and unenforceable (*see* CPLR 5232 [a]; *but see Fireman's Fund Ins. Co. v D'Ambra,* 766 F2d 95 [1985]).

Bloom, on the other hand, delivered one execution to the City of Yonkers and one execution to Officer Starkey. The settlement

for $160,000 was made by the City of Yonkers, not Officer Starkey.

There is no requirement that the judgment creditor obtain priority by way of execution before commencing a turnover proceeding (*see Garland D. Cox & Assoc. v Koffman,* 48 NY2d 878 [1979]). Therefore, Kitson's turnover proceeding was properly commenced. Bloom timely perfected his levy since he moved for leave to intervene in Kitson's turnover proceeding within 90 days of his levy and his motion for leave to intervene was granted.

In view of the foregoing, Bloom's levy has priority over Kitson. However, this does not mean that Bloom should recover.

As previously noted, Mrs. McKiernan's rights under the stipulation of settlement in the divorce action to 10% of the net recovery and her child's rights to 15% of the net recovery have priority over both Kitson and Bloom. Further, Mrs. McKiernan claims that an execution was delivered on her behalf in October 2001 prior to Bloom's execution and within 90 days of her application to intervene in Kitson's turnover proceeding. Her judgment for $130,000 includes $16,000 in unpaid child support arrears. An execution for child support arrears "shall have priority over any other assignment, levy or process" (CPLR 5234 [b]).

Mrs. McKiernan did not submit documentary proof of her execution and levy and did not claim priority over Kitson and Bloom. Instead, Mrs. McKiernan and Kitson agreed to share the proceeds of the settlement. This agreement was arrived at with the understanding that Kitson had priority over Bloom. As the Supreme Court determined, this agreement was unenforceable to the extent that it affected the rights of the minor child.

On this record it is apparent that the rights of Mrs. McKiernan to 10% of the net recovery and the right of her minor child to 15% of the net recovery have priority. However, it is unclear as to whether Bloom or Mrs. McKiernan have priority with respect to remaining sums. If a valid execution was delivered on behalf of Mrs. McKiernan and/or her minor child, the child's rights are paramount. Mrs. McKiernan's rights would also have priority if a valid execution was delivered on her behalf before Bloom delivered his execution.

Accordingly, the matter must be remitted to the Supreme Court, Westchester County, to determine if a valid execution was delivered on Mrs. McKiernan's behalf and if so, whether it was delivered prior to Bloom's execution.

The debtor's arguments on behalf of nonappealing alleged creditors are not properly before this Court and, in any event, are without merit (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144, 151 [2002]; *Matter of Commercial Bank of Informatics & Computing Technique Dev. Bank Informtechnika v Ostashko,* 274 AD2d 516 [2000]). The appellants' remaining contentions are likewise without merit.

The appeals from the decision must be dismissed, on the ground that no appeal lies from a decision (*see Schicchi v Green Constr. Corp.,* 100 AD2d 509 [1984]).

The judgment is modified, on the law, by (1) deleting the fourth decretal paragraph thereof, (2) deleting from the fifth decretal paragraph the sum "$45,560" and substituting therefor the sum "$10,720," (3) deleting the eleventh decretal paragraph thereof, and (4) deleting so much of the ninth decretal paragraph as dismissed the applications of the appellant Lawrence H. Bloom; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for a determination of whether an enforceable execution was delivered on behalf of Mary Joan McKiernan and/or her minor child and for further proceedings consistent herewith.

PRUDENTI, P.J., SMITH and CRANE, JJ., concur.

Ordered that the appeals from the decision are dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the law, by (1) deleting the fourth decretal paragraph thereof, (2) deleting from the fifth decretal paragraph the sum "$45,560" and substituting therefor the sum "$10,720," (3) deleting the eleventh decretal paragraph thereof, and (4) deleting so much of the ninth decretal paragraph as dismissed the applications of the appellant Lawrence H. Bloom; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for a determination of whether an enforceable execution was delivered on behalf of Mary Joan McKiernan and/or her minor child and for further proceedings consistent herewith.