In re Robert D. ALLEN, Debtor.

Pennsylvania Capital Bank, Plaintiff,

v.

Mark L. Glosser, Trustee and Robert D. Allen, Defendants.

Bankruptcy No. 97–26908–MBM.
Adversary No. 98–2142–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 18, 1998.

Peter N. Pross, Plummer & Beaman LLP, Pittsburgh, PA, for Pennsylvania Capital Bank.

Steven T. Shreve, Glosser & Shreve, Pittsburgh, PA, for Mark L. Glosser, Trustee.

Douglas A. Campbell, for Robert D. Allen.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

Pennsylvania Capital Bank (hereafter "PCB") asserts that it presently possesses judgment liens on certain property—an individual retirement account (IRA), a simplified employee pension (SEP), a 3.8% ownership interest in a limited partnership, and an interest in a joint checking account—which comprise a portion of the bankruptcy estate of Robert D. Allen, the debtor in the above-captioned bankruptcy case. PCB contends that it obtained its liens on the property in question prior to the commencement of the instant bankruptcy case by serving writs of execution upon the entities presently in possession of the aforementioned property in

accordance with Pennsylvania's process of attachment execution or, as it is more commonly known, garnishment for the satisfaction of a judgment. The debtor and the Chapter 7 trustee contend otherwise, arguing that (a) the limited partnership interest may not be garnished in accordance with Pennsylvania law, and (b) the entities that possess the IRA and the SEP were not properly served with writs of execution. As a result of, and in order to resolve, this dispute between the parties, PCB has commenced the above-captioned adversary proceeding to determine the validity and extent of the garnishment liens that it asserts.

The Court held an initial status conference for this adversary proceeding on May 21, 1998, at which time the parties conveyed to the Court their belief that the entire matter could be disposed of by way of summary judgment. Therefore, the Court, by order dated May 22, 1998, directed the parties to file summary judgment motions, which motions have since been filed by both PCB and the debtor, with the trustee joining in the dispositive motion of the debtor. The parties have also submitted to the Court a joint stipulation of fifteen pertinent facts, along with accompanying exhibits. Because the Court agrees with the parties that there does not exist a dispute as to any fact material to the resolution of PCB's complaint, the Court can and will rule on PCB's complaint at this time.

The debtor and the trustee, in their answers to PCB's adversary complaint, raise as an additional defense to PCB's assertion of its garnishment liens the purported ability of the trustee to avoid PCB's liens pursuant to 11 U.S.C. §§ 544(a) and 547(b).[1] PCB, in its brief in support of its summary judgment motion, attacks this defense. *See* PCB's Brief, pp. 8–9. Because the parties have raised as an issue whether PCB's liens can be avoided pursuant to §§ 544(a) and 547(b),

---

1. Although the debtor confines its first defense to the trustee's strong-arm powers under § 544(a), *see* Debtor's Answer, 1st Defense, p. 4, the trustee raises as issues in his first defense both (a) whether PCB perfected its claims against the debtor's property in question prior to the preference period, thereby implicating § 547(b), and (b) whether the rights of the trustee pursuant to

§ 544(a) are superior to PCB's rights. *See* Trustee's Reply, 1st Defense, pp. 3–4. Therefore, this Court shall conclude that the defense of avoidability under both §§ 544(a) and 547(b) has properly been raised. As set forth in the text of this opinion following this footnote, PCB recognizes that avoidability under both sections of the Bankruptcy Code has been raised.

the Court shall also deal with this issue at this time.

■ With respect to standing, the Court concludes that the debtor has not only theoretical standing but practical standing as well to participate in the litigation of this adversary proceeding. The debtor, as set forth in a separate decision of this Court,[2] has successfully sought to exempt a portion of his IRA and SEP.[3] As a consequence, the debtor has reason to oppose any lien interest that PCB asserts as an encumbrance on the IRA and SEP, and may participate in litigation surrounding lien avoidance under §§ 544(a) and 547(b) via 11 U.S.C. § 522(g)–(i). Of course, since any garnishment lien that PCB might possess is concededly judicial in nature, the debtor would be entitled, pursuant to 11 U.S.C. § 522(f)(1)(A), to avoid said lien in any event to the extent that it impairs the exemptions that the debtor has already successfully asserted.

### STATEMENT OF FACTS

PCB confessed judgment against the debtor on September 12, 1996, regarding the debtor's personal guaranty of a $230,000 note, and obtained a default judgment on October 23, 1996, regarding another promissory note that the debtor had signed for $180,000. See PCB's Complaint, para. 7–11; Debtor's Answer to Complaint, para. 1–11; Trustee's Reply to Complaint, para. 1. On September 22, 1997, the debtor commenced the instant bankruptcy case. PCB subsequently filed proofs of claim totalling $297,-050.19 on October 14, 1997, based on its two judgments. See In re Allen at 3 (citing Supplement to Pretrial Statement/Stipulation, Part VI, para. 38 & 39). PCB asserts that its claims have since grown to $310,-340.58 as of April 10, 1998. See PCB's Complaint, para. 29. While the debtor and the trustee concede that PCB possesses two judgments against the debtor and that PCB has filed proofs of claim based thereon, it does not appear that the parties have stipulated at any time as to the actual amount of PCB's claims.

On May 9, 1997, the Allegheny County Sheriff's Department (hereafter "Sheriff"), on behalf of PCB, personally served a writ of execution upon, as well as interrogatories directed to, Penn–Dithridge Apartments, L.P. (hereafter "Penn–Dithridge"), see PCB's Exhibit 5 & Joint Stipulation, para. 1, which is the limited partnership in which the debtor possesses a 3.8% ownership interest. On May 12, 1997, the Sheriff personally served a writ of execution upon, as well as interrogatories directed to, ESB Bank, F.S.B. (hereafter "ESB Bank"), see PCB's Exhibit 6, which is the bank in which the debtor possesses a joint checking account. On May 15, 1997, the Sheriff personally served a writ of execution upon, as well as interrogatories directed to, Fidelity Investments, see PCB's Exhibit 7 & Joint Stipulation, para. 2, whom PCB asserts is the custodian of the SEP. On May 21, 1997, PCB served by certified mail[4] a writ of execution upon, as well as interrogatories directed to, Janus Distributors, Inc. (hereafter "Janus"), see PCB's Exhibit 8, who is the custodian of the IRA.

On May 29, 1997, Mid–Atlantic Property Corporation, on behalf of Penn–Dithridge in its capacity as garnishee, answered PCB's interrogatories. See PCB's Exhibit 10 & Joint Stipulation, para. 4. On May 12, 1997, ESB Bank, in its capacity as garnishee, answered PCB's interrogatories. See PCB's Exhibit 9 & Joint Stipulation, para. 3. On July 2, 1997, Fidelity Service Company, Inc. (hereafter "Fidelity Service"), on behalf of Fidelity Management Trust Company (here-

---

2. The Court, in a separate decision entered on the same date as this opinion and accompanying order, see Pennsylvania Capital Bank v. Robert D. Allen (In re Allen), Bankruptcy No. 97–26908, Motion No. NONE (Bankr.W.D.Pa.1998), partially sustained PCB's objections to the debtor's exemptions of the IRA and SEP. As a consequence of that decision, the debtor is permitted to exempt a portion of both the IRA and SEP.

3. The debtor has not elected to exempt his 3.8% ownership interest in the limited partnership, and has subsequently agreed not to assert a right to exempt the joint checking account. See In re Allen at 3 n. 4; PCB's Complaint, para. 28 & Debtor's Answer, para. 28.

4. PCB also requested, and Janus obliged by signing and returning, a receipt verifying Janus' receipt of the writ and interrogatories. See PCB's Exhibit 8.

after "Fidelity Management Trust") in its capacity as custodian of the debtor's SEP, answered PCB's interrogatories that had been directed by PCB to Fidelity Investments as garnishee. *See* PCB's Exhibit 18 & Joint Stipulation, para. 12. On or after June 26, 1997, Janus, in its capacity as garnishee, answered PCB's interrogatories. *See* PCB's Exhibit 16 & Joint Stipulation, para. 10.[5]

On June 19, 1997, the debtor filed preliminary objections to PCB's garnishment actions against, *inter alia*, Penn–Dithridge, Fidelity Investments, and Janus on the basis that the debtor's property held by these entities was immune to, or exempt from, execution under the laws of Pennsylvania. *See* PCB's Exhibit 14 & Joint Stipulation, para. 8. None of the entities that PCB caused to be served as garnishees preliminarily objected to PCB's attempts at garnishment. However, Fidelity Service, in its answer to PCB's interrogatories on behalf of Fidelity Management Trust, objected to PCB's service of the writ of execution and interrogatories upon Fidelity Investments on the basis that (a) Fidelity Investments does not exist since it is merely "a tradename which collectively refers to the group of affiliated, but separate, Fidelity companies," (b) Fidelity Management Trust is the true custodian of the debtor's SEP and, as such, it should have been served as garnishee, and (c) Fidelity Investments, therefore, was an improper entity for PCB to cause to be served. *See* PCB's Exhibit 18, Fidelity Service's Attachment A.

On August 1, 1997, the Pennsylvania Court of Common Pleas for Allegheny County entered an order that, *inter alia*, (a) dismissed with prejudice the debtor's preliminary objections and claims for exemption/immunity regarding the debtor's limited partnership interest in Penn–Dithridge, and (b) continued for ninety days PCB's garnishment actions against, as well as the debtor's preliminary objections and claims of objection regarding, the debtor's IRA and SEP.

**5.** It is not entirely clear upon which date Janus actually answered PCB's interrogatories since Janus' representative (a) submitted a letter addressed to PCB's counsel dated June 26, 1997, along with Janus' answers to PCB's interrogatories, *see* PCB's Exhibit 16, and (b) signed an

## DISCUSSION

█ In Pennsylvania,

"[a]ttachment execution" is a name given to the process of garnishment for the satisfaction of a judgment. As to the judgment debtor it is · an execution, but as to the garnishee it is an original process, a summons commanding him to appear and show cause, if any he has, why the judgment should not be levied on the property of the defendant [ (ie., judgment debtor) ] in his hands or any debt due the defendant from the garnishee.

15 *Pennsylvania Law Encyclopedia Execution* § 191 at 410 (West 1959) (citing *Sniderman v. Nerone*, 136 Pa.Super. 381, 7 A.2d 496 (Pa.Super.1939)). "Execution shall be commenced by filing a praecipe for a writ of execution with the [appropriate] prothonotary." Pa.R.C.P. 3103(a), 42 Pa.Cons.Stat.Ann. (Purdon's 1998). "Upon issuance of the writ [of execution by the prothonotary], the prothonotary shall [generally] transmit it directly to the [appropriate] sheriff to whom it is directed [for service upon the named garnishee]." Pa.R.C.P. 3103(e), 42 Pa.C.S.A. (Purdon's 1987). "Service of the writ [of execution] upon the garnishee shall attach all property of the defendant [ (ie., judgment debtor) ] which may be attached [ (ie., garnished) ] under these rules which is in the possession of the garnishee." Pa.R.C.P. 3111(b), 42 Pa.C.S.A. (Purdon's 1987). Therefore, a garnishment lien on property susceptible to garnishment arises as of the date upon which a writ of execution is properly served upon the garnishee holding said property. *See In re J. Robert Pierson, Inc.*, 36 B.R. 853, 854–55 (Bankr.E.D.Pa.1984), *aff'd*, 44 B.R. 556 (E.D.Pa.1984); *Schreiber v. Kellogg*, 194 B.R. 559, 568 (E.D.Pa.1996), *aff'd in part, rev'd in part*, 124 F.3d 188 (3rd Cir.1997); *In re Boylan*, 65 F.Supp. 105, 108 (E.D.Pa.1946), *aff'd*, 157 F.2d 518 (3rd Cir. 1946).

affidavit dated July 1, 1997, regarding her answers to the interrogatories. *See Id.* However, the Court can safely conclude that the interrogatories were not answered prior to the earlier of the two aforementioned dates, or June 26, 1997.

## I. Whether PCB obtained garnishment liens on the four items of the debtor's property in question?

PCB maintains that it obtained liens on the debtor's property in question by virtue of, and as of the date upon which occurred, the service of writs of execution upon those entities who presently possess said property. The debtor and the Chapter 7 trustee contend otherwise with respect to the debtor's 3.8% limited partnership interest, the IRA, and the SEP, arguing in particular that (a) the limited partnership interest may not even be garnished under Pennsylvania law, (b) PCB, by serving the writ of execution upon Janus via certified mail, improperly served Janus since Pennsylvania's garnishment rules generally call only for personal service by the appropriate sheriff, and (c) service upon Fidelity Investments was improper since Fidelity Investments does not exist as an entity susceptible to service of any process. Consequently, the debtor and the trustee contend, PCB does not have garnishment liens on the limited partnership interest, the IRA, or the SEP.

The debtor also denies PCB's assertion that PCB possesses a garnishment lien on the debtor's joint checking account at ESB Bank. See Debtor's Answer, para. 26. However, the debtor has withdrawn his claim for exemption of the joint checking account, see supra note 3, and the trustee apparently concedes that PCB possesses a lien on the checking account. See Trustee's Reply, para. 26 (admitting the averments of paragraph 26 of PCB's complaint, wherein PCB averred that it possesses a lien on the checking account). Such concession by the trustee likely stems from the fact that the checking account apparently only contains $30.00 as of the petition filing date. See PCB's Complaint, para. 27; Debtor's Answer, para. 27 (admitting paragraph 27 of complaint); Trustee's Reply, para. 27 (same as debtor's answer). Because the trustee, who is the true party in interest with respect to the checking account, concedes that PCB possesses a garnishment lien on said checking account, the Court will accept that PCB possesses such a lien on the checking account.[6] The Court's analysis regarding the limited partnership interest, the IRA, and the SEP follows.

### A. Whether PCB obtained a lien on the debtor's limited partnership interest by utilizing Pennsylvania's process of garnishment and serving a writ of execution upon Penn–Dithridge?

■ The debtor and the trustee contend that the debtor's limited partnership interest may not be garnished under Pennsylvania law because, according to the debtor and the trustee, Pennsylvania law provides that an executing creditor's sole recourse against a partnership or limited partnership interest is through a charging order obtained pursuant to either 15 Pa.C.S.A. §§ 8345 (partnership interest) or 8563 (limited partnership interest). The debtor and the trustee support their position by pointing out, and correctly, that (a) the charging order described in §§ 8345 and 8563 provides a judgment creditor with recourse against a partnership or limited partnership interest, see 15 Pa.C.S.A. §§ 8345, 8563 (Purdon's 1995), (b) Pennsylvania has adopted the Uniform Partnership Act (hereafter "UPA") and the Uniform Limited Partnership Act (hereafter "ULPA"), see 15 Pa.C.S.A. §§ 8301(a), 8501 (Purdon's 1995), (c) 15 Pa.C.S.A. §§ 8345 and 8563 respectively comprise parts of Pennsylvania's version of the UPA and ULPA, and (d) the majority of courts in other jurisdictions that have adopted the UPA and ULPA have held that the charging order provided therein, rather than the process of post-judgment attachment execution, is the exclusive remedy of a judgment creditor against a partnership interest. See, e.g., Baum v. Baum, 51 Cal.2d 610, 335 P.2d 481, 483 (Cal.1959); In the Matter of Pischke, 11 B.R. 913, 918 (Bankr. E.D.Va.1981); Myrick v. Second National Bank of Clearwater, 335 So.2d 343, 345 (Fla. Dist.Ct.App.1976); 91st Street Joint Venture v. Goldstein, 114 Md.App. 561, 691 A.2d 272, 276 (Md.App.1997). However, and unfortunately for the debtor and the trustee, the charging order does not constitute the sole

---

**6.** The Court also believes that PCB properly served ESB Bank with a writ of execution, thereby obtaining a garnishment lien on the checking account.

remedy of a judgment creditor against a partnership or limited partnership interest in Pennsylvania.

For this Court to accept the position of the debtor and the trustee, the Court would have to ignore the plain language of Pa.R.C.P. 3108(a)(3), which provides that "the interest of ... [a] defendant in a partnership" may be garnished by service of a writ of execution upon "the partnership as garnishee." Pa. R.C.P. 3108(a)(3), 42 Pa.C.S.A. (Purdon's 1987); *see also* 15 *Pennsylvania Law Encyclopedia Execution* § 194 at 96 (LEXIS Supp.1997) ("The Rules now authorize attachment of ... an interest in a partnership") and § 200 at 97 (LEXIS Supp.1997) ("An interest in a partnership is now subject to attachment."). The Court is loath to ignore such plain language, particularly given that (a) Pennsylvania's present rules of attachment execution, including Pa.R.C.P. 3108(3), were adopted on March 30, 1960, *see* Pa.R.C.P. 3249, 42 Pa.C.S.A. (Purdon's 1987) (rescinded as obsolete) (present rules to supersede rules of attachment execution adopted in 1954), which date is substantially later than Pennsylvania's initial enactment of statutory provisions for a charging order, *see* 15 Pa.C.S.A. §§ 8345 (originally enacted as Act of March 26, 1915, P.L. 18, part V, § 28 and codified at 59 P.S. § 75), 8563 (originally enacted as Act of April 12, 1917, P.L. 55, § 22 and codified at 59 P.S. § 206), and (b) the 1954 precursor to Pennsylvania's present rules of attachment execution only allowed for garnishment of particular property "as provided by statute," *see* Pa.R.C.P. 3103, 376 Pa. lxxiii (1954 Pa.) (superseded by procedural rules adopted in 1960—see Pa.R.C.P. 3249), and a Pennsylvania statutory provision providing for garnishment of a partnership

interest did not exist in 1954. *See Id.* at Note; 12 P.S. §§ 2261–2265 & 2269 (Purdon's 1936) (repealed 1960, as set forth at Pa.R.C.P. 3241(3), (16), (43), 42 Pa.C.S.A. (Purdon's 1987)). This Court certainly cannot presume that Pennsylvania's Supreme Court, which is, and has since 1937 been, vested with the authority to promulgate state rules of civil procedure, *see* Act of June 21, 1937, No. 392, § 1, 1937 Pa.Laws 1982, 1983, would have futilely included in the rules adopted in 1960 a new provision allowing for the garnishment of a partnership interest if it had also previously held, and it continued to take the position, that a charging order was the exclusive remedy for a judgment creditor against a partnership interest.[7] Furthermore, (a) the Court is aware of at least one other jurisdiction—New York—that has statutes which provide for both a charging order as well as garnishment of a partnership interest, *see* N.Y. Partnership Law § 54 (McKinney 1998) and N.Y.C.P.L.R. 5201(c)(3) (McKinney 1998), (b) the language of New York's pertinent statutory provisions is similar to that in Pennsylvania's statutory provisions, and (c) New York's courts, in all decisions at least since 1977, have unanimously concluded that a judgment creditor may proceed against a judgment debtor's partnership interest either by way of a charging order or via garnishment. *See Princeton Bank and Trust Co. v. Berley,* 57 A.D.2d 348, 394 N.Y.S.2d 714, 718–19 (N.Y.App.Div.1977); *Jones v. Palermo,* 105 Misc.2d 405, 432 N.Y.S.2d 288, 290 (N.Y.Sup. 1980); *Executive House Realty v. Hagen,* 108 Misc.2d 986, 438 N.Y.S.2d 174, 179 (N.Y.Sup.Ct.1981); 59A *Am.Jur.2d Partnership* § 796 (1987).[8] Therefore, this Court

---

**7.** This Court is aware that Maryland's Court of Special Appeals, in its decision in *91st Street Joint Venture,* cited therein *Shirk v. Caterbone,* 201 Pa.Super. 544, 193 A.2d 664, 665 (Pa.Super.1963), for the proposition that Pennsylvania adheres to the apparent majority rule that a charging order is a judgment creditor's exclusive remedy for proceeding against a partnership interest. *See 91st Street Joint Venture,* 691 A.2d at 276. This Court respectfully disagrees with the interpretation of *Caterbone* by the court in *91st Street Joint Venture,* however, since the *Caterbone* decision neither dealt with, nor even addressed implicitly, whether a charging order is the exclusive method by which a judgment creditor can

reach a partnership interest. Furthermore, the Court is unaware of any Pennsylvania decision subsequent to the adoption in 1960 of Pa.R.C.P. 3108(a)(3) that addresses, either explicitly or implicitly, whether a charging order is the exclusive method in Pennsylvania by which a judgment creditor can reach a partnership interest.

**8.** This Court is aware that the courts in *Myrick* and *91st Street Joint Venture* cited *Weisinger v. Rae,* 19 Misc.2d 341, 188 N.Y.S.2d 10, 19 (N.Y.Sup.Ct.1959), for the proposition that New York adheres to the apparent majority rule that a charging order is a judgment creditor's exclusive remedy for proceeding against a partnership in-

holds that a judgment creditor in Pennsylvania may garnish a judgment debtor's interest in a partnership or limited partnership notwithstanding the availability of a charging order against the same interest.

Having determined that PCB, pursuant to Pa.R.C.P. 3108(a)(3), could garnish the debtor's interest in the limited partnership by causing the Sheriff to serve as garnishee Penn–Dithridge, the limited partnership, the Court must next ascertain whether the Sheriff properly served Penn–Dithridge. Pa.R.C.P. 3111(a) provides, in pertinent part, that "[t]he writ [of execution] shall[, with several exceptions not relevant here,] be served by the sheriff upon the garnishee in the manner prescribed by [Pa.R.C.P] Rule 402(a)." Pa.R.C.P. 3111(a), 42 Pa.C.S.A. (Purdon's 1987). Pa.R.C.P. 402(a) provides, in pertinent part, that "[o]riginal process may be served (1) by handing a copy to the defendant [(ie., garnishee for the purpose of Pa.R.C.P. 3111(a))]; or (2) by handing a copy . . . (iii) at any office or usual place of business of the defendant [ (ie., garnishee)] to his agent or to the person for the time being in charge thereof." Pa.R.C.P. 402(a), 42 Pa. C.S.A. (Purdon's 1987). Because the Sheriff personally served an agent or person in charge of Penn–Dithridge on May 9, 1997, see PCB's Exhibit 5, and since objections to such service were voiced by neither Penn–Dithridge as garnishee nor the debtor at any time, including the present via answers to the instant adversary proceeding by the debtor and the trustee, the Court must conclude that service by the Sheriff complied with Pa.R.C.P. 402(a). Therefore, PCB (a) properly served a writ of execution upon Penn–Dithridge, and (b) obtained and presently possesses, pursuant to Pa.R.C.P. 3111(b), a garnishment lien on the same interest.[9]

**B. *Whether PCB obtained a lien on the debtor's IRA by serving the writ of execution upon Janus via certified mail given that Pennsylvania's garnishment rules generally permit only personal service by an appropriate sheriff?***

■ PCB served its writ of execution upon Janus, the custodian of the debtor's IRA, via certified mail, return receipt requested. The debtor and the trustee assert that this method of service upon Janus was improper and that PCB, as a consequence, did not thereby obtain a lien on the IRA. PCB, although it initially contended that it could effect service in such a manner pursuant to 42 Pa.C.S.A. § 5323(a)(3), see PCB's Exhibit 8, now concedes that such service upon Janus was improper. See PCB's Reply Brief in Support of Motion for Summary Judgment, p. 3 note 3. PCB nevertheless argues that its lien on the debtor's IRA is valid because the debtor and Janus both waived their right to object to the service defect.

The Court agrees with the parties that PCB improperly served its writ of execution upon Janus because (a) Pa.R.C.P. 3111(a) requires, with several exceptions not relevant here,[10] that a writ of execution must be

---

terest. *See Myrick,* 335 So.2d at 345; *91st Street Joint Venture,* 691 A.2d at 276. While this Court agrees that there is language in *Weisinger* to support that position, the precise pertinent issue dealt with in *Weisinger* was whether the creditor of an individual partner could proceed against specific partnership property, which the court in *Weisinger* decided in the negative. *See Weisinger,* 188 N.Y.S.2d at 19. If, and to the extent that, the court in *Weisinger* did actually hold that a charging order is the exclusive remedy for proceeding against a partnership interest, this Court must presume that said decision is no longer followed in New York given that decisions by New York's courts since 1977 have unanimously held to the contrary.

9. Since the Court concludes that PCB obtained and presently possesses a garnishment lien on the limited partnership interest, the Court need not address PCB's contention that the debtor had previously waived, was estopped from asserting, or was barred by collateral estoppel from asserting, his right to assert that a limited partnership interest, such as his own, may not be garnished in accordance with Pennsylvania law.

10. The lone exceptions to service by an appropriate sheriff in accordance with means provided in Pa.R.C.P. 402(a) are provided in Pa.R.C.P. 3112 and 3113. *See* Pa.R.C.P. 3111(a), 42 Pa.C.S.A. Those exceptions, certain of which permit service outside of Pennsylvania and via means other than personal service by a sheriff, only apply in the instances of a garnishment of (a) real property, *see* Pa.R.C.P. 3112, 42 Pa.C.S.A. (Purdon's 1987), and (b) "a lien upon real property created under a mortgage, judgment or otherwise." *See*

served by the appropriate sheriff upon the garnishee in the manner prescribed by Pa. R.C.P 402(a), and (b) Pa.R.C.P 402(a) does not allow for service by certified mail. The language of Pa.R.C.P. 3111(a) is clear that service of a writ of execution must be effected by an appropriate sheriff in accordance with Pa.R.C.P. 402(a), and Pa.R.C.P. 402(a), in just as clear a manner, does not allow for service via certified mail. 42 Pa.C.S.A. § 5323(a)(3), upon which PCB initially relied in choosing to serve Janus via certified mail, admittedly provides that *"[w]hen the law of ... [Pennsylvania] authorizes service of process outside ... [Pennsylvania]*, the service, when reasonably calculated to give actual notice, may be made ... [b]y any form of mail addressed to the person to be served and requiring a signed receipt." 42 Pa. C.S.A. § 5323(a)(3) (Purdon's 1981) (emphasis added). However, Pennsylvania's rules of garnishment only allow for service of a writ of execution outside of Pennsylvania in the limited circumstances that are set forth in Pa.R.C.P. 3112 and 3113, *see supra* note 10; *see also* Pa.R.C.P. 3103, 42 Pa.C.S.A. (Purdon's 1987 & Supp.1998) (a writ of execution shall be directed to a sheriff for the Commonwealth of Pennsylvania for service by said sheriff, which practically means that service outside of Pennsylvania is not possible), and none of those particular circumstances are present with respect to service upon Janus. *See Id.* Therefore, that PCB improperly served its writ of execution upon Janus is clear.

■ However, and unfortunately for the debtor and the trustee, the Court must also agree with PCB that the debtor and Janus both waived their right to object to the aforementioned service defect because, for whatever reason, neither the debtor nor Janus timely objected to said service defect. With respect to the debtor, although he filed a preliminary objection to PCB's garnishment

action against Janus on June 19, 1997, on the basis that his IRA was exempt from execution under the laws of Pennsylvania, *see* PCB's Exhibit 14, para. 14, the debtor failed at the same time to raise a preliminary objection to PCB's improper service of the writ of execution.[11] An improper service of a writ of execution, such as that effected by PCB, constitutes a ground for a preliminary objection to a garnishment action. *See* Pa.R.C.P. 1028(a)(1), 42 Pa.C.S.A. (Purdon's 1998) ("improper form or service of a writ of summons or a complaint" constitutes a ground for preliminary objection); 15 *Pennsylvania Law Encyclopedia Execution* § 191 at 410 ("the process of garnishment ...[,] as to the garnishee[,] ... is ... a summons ..."); Pa. R.C.P. 3145(a), 42 Pa.C.S.A. (Purdon's 1987) ("The procedure between the plaintiff and the garnishee shall ... be the same as though the interrogatories were a complaint"). Since it constitutes a ground for a preliminary objection, an objection to the service of a writ of execution must be raised at the same time that other preliminary objections are raised. *See* Pa.R.C.P. 3142(b), 42 Pa.C.S.A. (Purdon's 1987), and 1028(b), 42 Pa.C.S.A. (Purdon's 1998) ("All preliminary objections shall be raised at one time."). Therefore, the debtor, if he wished to object to PCB's improper service of the writ of execution, needed to raise said objection on June 19, 1997, when he raised his other preliminary objections.

■ Furthermore, and pertinent to both the debtor and Janus in this instance, objections that pertain to jurisdiction, such as an objection to the service of a writ of execution, necessarily must be raised preliminarily before a garnishee answers garnishment interrogatories. *See* Pa.R.C.P. 3142(c), 42 Pa. C.S.A. (Purdon's 1987), and 3145(b)(2), 42 Pa.C.S.A. (Purdon's 1987) ("Note: Objections to the attachment [ (ie., garnishment) ], other than the defenses of immunity or exemption,

---

Pa.R.C.P. 3113, 42 Pa.C.S.A. (Purdon's 1987); *see also Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 407 Pa.Super. 157, 595 A.2d 172, 174–76 (Pa.Super.1991). Because Janus possesses funds comprising the debtor's IRA rather than real property or a lien thereon, the exceptions to personal service by an appropriate sheriff simply do not apply.

11. The Court finds that the debtor, as of June 19, 1997, was aware of PCB's improper service of the writ of execution upon Janus because PCB's counsel carbon copied (ie., "cc:") the debtor on the May 21, 1997 cover letter that said counsel attached to said writ of execution. *See* PCB's Exhibit 8.

must be raised preliminarily."). Nevertheless, and as already mentioned, the debtor failed to raise the impropriety of PCB's service of the writ of execution as a preliminary objection. As well, Janus failed to raise the same impropriety either before or in its answer to PCB's interrogatories. Therefore, neither the debtor nor Janus timely raised as a ground for objection to PCB's garnishment action the impropriety of PCB's service of the writ of execution upon Janus.

Consequently, the debtor and Janus irrevocably waived as a ground for future objection, and the debtor and the trustee are thus now barred from raising as an objection, to PCB's garnishment lien on the debtor's IRA the impropriety of PCB's service of the writ of execution upon Janus.[12] *See Com. ex rel. Snyder v. Spangler,* 11 D. & C.3d 575, 581 (1979); *First National Bank of Woodstown v. Trainer,* 209 Pa. 387, 58 A. 816, 817 (Pa. 1904); *Rakowski v. Rosenthal,* 266 Pa. 108, 109 A. 612, 613 (Pa.1920); *American Trust Company v. Kaufman, et al.,* 276 Pa. 35, 119 A. 749, 752 (Pa.1923); 15 *Pennsylvania Law Encyclopedia Execution* §§ 205 at 434, 210 at 441 (West 1959); *see also 6 Am.Jur.2d Attachment and Garnishment* §§ 376, 379 (1963).

■■■ The debtor and the trustee also assert at this time that "[t]he [only] appropriate means for ... [PCB] to enforce its judgments would have been [for PCB] to transfer the judgments to Colorado in order to obtain jurisdiction over the res and pursue attachment there." *See* Memorandum in Support of Defendants' Motion for Summary Judgment, p. 7. By arguing in particular that transfer of the judgments to Colorado would have been necessary in order to obtain jurisdiction over the debtor's IRA (ie., the res), the Court understands the debtor and the trustee to be maintaining that Pennsylvania's courts lack jurisdiction over the debtor's

IRA. To the extent that the debtor and the trustee are making this argument at this time, they are (a) too late in doing so, and (b) incorrect in any event. First, the debtor and the trustee are too late in presently raising this alleged jurisdictional defect because the debtor has already waived his right to assert an objection on such ground. Such waiver on the debtor's part occurred because (a) a lack of in rem or quasi in rem jurisdiction constitutes a preliminary objection since (i) "'jurisdiction over the person' ... is sufficiently elastic to embrace a defense or objection that the court lacks in rem or quasi-in-rem jurisdiction," *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (2d ed.1990), and (ii) a lack of personal jurisdiction constitutes a preliminary objection, *see* Pa.R.C.P. 1028(a)(1), 42 Pa.C.S.A, (b) the debtor failed to raise as a defense the lack of in rem/quasi in rem jurisdiction over his IRA when he raised his other preliminary objections, and (c) the debtor failed to raise such a preliminary objection prior to Janus' answer to PCB's interrogatories. *See supra* pp. 123–25. Furthermore, although the Court accepts that Janus, as the garnishee, may not waive an objection to the lack of in rem/quasi in rem jurisdiction notwithstanding its ability to waive an objection to a lack of jurisdiction over itself, *see 6 Am.Jur.2d Attachment and Garnishment* § 376 (1963) (citing numerous cases at footnotes 9, 12 and 13 for the proposition "that a garnishee does not by general appearance or by answer waive defects going to the court's jurisdiction over the res or proceedings, ... or over the defendant"), the Court is nevertheless quite certain that the debtor herein, as the defendant in PCB's garnishment actions, may itself waive such a defect. *See Spangler,* 11 D. & C.3d at 581. Second, the debtor's IRA is subject to the jurisdiction of Pennsylvania's courts in any event pursuant to 42 Pa.C.S.A. § 5306 [13] be-

---

12. Because the debtor, on June 19, 1997, clearly waived his right to object to the impropriety of PCB's service upon Janus, the Court need not address whether the debtor also waived such right three days earlier on June 16, 1997, when the debtor authorized Janus to release information to PCB regarding his IRA. *See* PCB's Exhibit 13 & Joint Stipulation, para. 7. Of course, the debtor's act to authorize release of informa-

tion on June 16, 1997 did not constitute, nor could it have resulted in, a waiver by Janus of Janus' personal right to object to PCB's service deficiencies.

13. 42 Pa.C.S.A. § 5306 provides that "[t]he tribunals of ... [Pennsylvania] shall have jurisdiction over obligations owed by persons who are subject to the jurisdiction of the tribunals of ...

cause (a) the debtor's IRA is an obligation owed by Janus to the debtor, and (b) Janus is subject to the personal jurisdiction of Pennsylvania's courts [14] since the debtor and Janus both waived any objection to a lack of personal jurisdiction over Janus given that (i) a lack of personal jurisdiction over a garnishee constitutes an objection that must be raised preliminarily before interrogatories are answered, and (ii) neither the debtor nor Janus raised such a preliminary objection prior to Janus' answering of PCB's interrogatories. *See supra* pp. 123–25.[15]

Therefore, the Court holds that, had either the debtor or Janus timely objected to PCB's improper service of the writ of execution upon Janus, then PCB would not have thereby obtained a garnishment lien on the debtor's IRA. In that event, PCB would have been left with, as alternatives, (a) causing the Sheriff, if possible, to serve a writ of execution upon Janus within Pennsylvania in accordance with Pa.R.C.P 402(a), *see Frycklund v. Way*, 410 Pa.Super. 347, 599 A.2d 1332, 1335 (Pa.Super.1991) ("Where service of process is defective, ... the remedy is to set aside the service[; however,] if plaintiff can properly bring defendant on the record, the original action may be pursued"); *Nicolosi v. Fittin*, 434 Pa. 133, 252 A.2d 700, 701 (Pa.1969) (citing *Salay v. Braun*, 427 Pa. 480, 235 A.2d 368, 370 & 372 (Pa.1967)), thereby obtaining a garnishment lien, or (b) transferring its judgments to Colorado and seeking execution upon the IRA pursuant to Colorado law. However, the Court must also hold that PCB can garnish the debtor's IRA via Pennsylvania's courts, and that PCB present-

ly possesses a garnishment lien on said IRA, given the failure by the debtor and Janus to timely object to PCB's service impropriety.

### C. *Whether PCB obtained a lien on the debtor's SEP by serving the writ of execution upon Fidelity Investments?*

PCB instituted its garnishment action against the debtor's SEP by causing the Sheriff to personally serve a writ of execution at an address in Pittsburgh, Pennsylvania upon a person supposedly in charge of Fidelity Investments, whom PCB asserted, at least at the time of said service, is the custodian of the debtor's SEP. *See* PCB's Exhibit 7. The debtor and the trustee assert that this service was improper because Fidelity Management Trust is the actual custodian of the debtor's SEP and, as such, it should have been served as garnishee. As a consequence, the debtor and the trustee assert, Fidelity Investments was an improper entity for PCB to cause to be served and PCB, by virtue of such service, did not thereby obtain a lien on the SEP. The preceding objection to PCB's service was also asserted by Fidelity Service in its answer to PCB's interrogatories on behalf of Fidelity Management Trust. *See* PCB's Exhibit 18, Fidelity Service's Attachment A. PCB counters by apparently asserting that its service was proper and relies for support on the last sentence of Pa.R.C.P. 3111(a), which provides that "[i]f the garnishee served was not named in the writ he shall be added as a garnishee and return made accordingly." Pa.R.C.P. 3111(a), 42 Pa.C.S.A. PCB also argues that

[Pennsylvania] whether or not the persons to whom the obligations are owed are subject to the jurisdiction of the tribunals of ... [Pennsylvania]." 42 Pa.C.S.A. § 5306 (Purdon's 1981). *See also Spangler*, 11 D. & C.3d at 580; *Marratto v. Marratto*, 105 Pitts.L.J. 405, 410–14 (1957) (both cases hold that Pennsylvania's courts possess control or jurisdiction over obligations such as those described in 42 Pa.C.S.A. § 5306).

**14.** The Court is also relatively certain that 42 Pa.C.S.A. § 5322(a)(1), which comprises that part of Pennsylvania's long-arm statute that allows Pennsylvania's courts to exercise personal jurisdiction over nonresident defendants on the basis that said defendants transact business in Pennsylvania, *see* 42 Pa.C.S.A. § 5322(a)(1) (Purdon's 1998), provides Pennsylvania's courts with

authority to exercise personal jurisdiction over Janus.

**15.** The debtor and the trustee cite *Rivera v. Philadelphia Theological Seminary*, 595 A.2d at 175, to support their position. However, *Rivera* is distinguishable from the instant case because (a) the garnishee in *Rivera* timely objected to the improper service of the garnisher therein, whereas neither Janus nor the debtor herein so objected in a timely fashion, and (b) the property sought to be garnished in *Rivera* was not otherwise subject to the jurisdiction of Pennsylvania's courts, whereas Pennsylvania's courts may exercise in rem or quasi in rem jurisdiction over the debtor's IRA herein given both a waiver of an objection for lack of such jurisdiction and the application herein of 42 Pa.C.S.A. § 5306.

its lien on the debtor's SEP is valid because the debtor and Fidelity Management Trust both waived their right to object to any defect in service.

 The Court agrees with the debtor, the trustee, and Fidelity Service, on behalf of Fidelity Management Trust, that PCB's service of its writ of execution upon Fidelity Investments was improper. First, PCB does not dispute, and actually appears to concede, that Fidelity Management Trust is the actual custodian of the debtor's SEP. *See* PCB's Reply Brief in Support of Motion for Summary Judgment, pp. 1–2 and 5. Therefore, the Court finds that Fidelity Management Trust is the actual custodian of the debtor's SEP. Since it is the actual custodian of the debtor's SEP, Fidelity Management Trust is also properly the party upon whom service should have been made as garnishee of the debtor's SEP. Unfortunately for PCB, it did not name as garnishee in the writ of execution Fidelity Management Trust. Instead, PCB named as garnishee in its writ Fidelity Investments, whom it would appear, from the content of Fidelity Service's answer to PCB's interrogatories, does not even exist as a legal entity. PCB argues that this error was rectified, asserting apparently that (a) Fidelity Management Trust was nevertheless served as garnishee even though it was not named as garnishee in the writ, and (b) Fidelity Management Trust, pursuant to Pa.R.C.P. 3111(a), should have been added by the Sheriff to the writ as garnishee. The Court cannot accept PCB's position, however, because Fidelity Management Trust simply was not ever properly served as garnishee in accordance with Pa. R.C.P. 402(a). Based upon the evidence submitted, it appears that neither Fidelity Management Trust nor Fidelity Service is located in Pittsburgh, Pennsylvania. *See* PCB's Exhibit 18 (both entities appear to be located in Boston, Massachusetts). Therefore, it is not possible that the Sheriff, in accordance with Pa.R.C.P. 402(a), could have served Fidelity Management Trust (a) by handing a copy to Fidelity Management Trust, or (b) by handing a copy, at any office or usual place of business of Fidelity Management Trust, to an agent, or to the person for the time being in charge, of Fidelity Management Trust.

Perhaps PCB presumes that Fidelity Management Trust was served as garnishee because it ultimately answered PCB's garnishment interrogatories. If PCB presumes as much, however, it is mistaken because the filing of such an answer, although it can form the basis for waiver of an objection to improper service, neither corrects improper service nor effects service that was never made in the first instance.

 PCB's defective service is critical because "[t]he rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the . . . [garnishee] is dependent upon proper service having been made." *Sharp v. Valley Forge Medical Center and Heart Hospital, Inc.,* 422 Pa. 124, 221 A.2d 185, 187 (Pa.1966); *Frycklund,* 599 A.2d at 1334 (citing *Sharp* ). Indeed, "if service is not properly made, in the absence of waiver of an objection to invalid service, it is irrelevant if the . . . [garnishee] subsequently learns[, by whatever means,] as in the instant case, that the [S]heriff left" a writ of execution regarding the debtor's SEP. *See Martin v. Gerner,* 332 Pa.Super. 507, 481 A.2d 903, 909 (Pa.Super.1984); *Frycklund,* 599 A.2d at 1334 (citing *Martin* ). Therefore, PCB did not obtain a garnishment lien on the debtor's SEP unless both the debtor and Fidelity Management Trust waived their objections to PCB's defective service.

 Unfortunately for the debtor and the trustee, the Court must once again agree with PCB that both the debtor and his custodian (Fidelity Management Trust in this instance) waived their opportunity to object to PCB's invalid service since neither timely raised such an objection. As set forth in the above discussion regarding the debtor's IRA, (a) an improper service of a writ of execution constitutes a ground for a preliminary objection to a garnishment action and, thus, must be raised as an objection, if at all, at the same time that other preliminary objections are raised, and (b) objections that pertain to jurisdiction, such as an objection to the service of a writ of execution, necessarily must be raised preliminarily before a garnishee answers garnishment interrogatories. *See*

*supra* pp. 123–25. With respect to the debtor, although he filed a preliminary objection to PCB's garnishment action against Fidelity Management Trust on June 19, 1997, on the basis that his SEP was exempt from execution under the laws of Pennsylvania, *see* PCB's Exhibit 14, para. 14, the debtor failed at the same time to raise a preliminary objection to PCB's improper service of the writ of execution.[16] As well, Fidelity Service, on behalf of Fidelity Management Trust, neglected to preliminarily object to PCB's improper service of the writ of execution, instead waiting to voice said objection untimely in its answers to PCB's interrogatories. Therefore, neither the debtor nor Fidelity Management Trust timely raised as a ground for objection to PCB's garnishment action the impropriety of PCB's service of the writ of execution. Consequently, the debtor and Fidelity Management Trust irrevocably waived as a ground for future objection, and the debtor and the trustee are thus now barred from raising as an objection, to PCB's garnishment lien on the debtor's SEP the impropriety of PCB's service of the writ of execution upon Fidelity Investments. *See supra* pp. 123–25.

Therefore, the Court holds that, had either the debtor or Fidelity Management Trust timely objected to PCB's improper service of the writ of execution upon Fidelity Investments, then PCB would not have obtained a garnishment lien on the debtor's SEP. In that event, PCB would have been left with, as an alternative, causing the Sheriff, if possible, to serve a writ of execution upon Fidelity Management Trust within Pennsylvania in accordance with Pa.R.C.P 402(a), *see Frycklund*, 599 A.2d at 1335; *Nicolosi*, 252 A.2d at 701, thereby obtaining a garnishment lien. However, the Court must also hold that PCB presently possesses a garnishment lien on the debtor's SEP given the failure by the debtor and Fidelity Management Trust to timely object to PCB's service impropriety.

**16.** The Court finds that the debtor, as of June 19, 1997, was aware of PCB's improper service of the writ of execution upon Fidelity Investments because, in his preliminary objections and brief in support thereof, both of which are dated June

### D. *Summary.*

Therefore, PCB obtained and presently possesses garnishment liens on the debtor's joint checking account with ESB Bank, the limited partnership interest in Penn–Dithridge, and the debtor's IRA and SEP.

## II. *Whether the trustee can avoid any or all of PCB's garnishment liens pursuant to 11 U.S.C. §§ 544(a) or 547(b)?*

### A. *Whether PCB's liens can be avoided under § 544(a)?*

As an initial matter, the Court can summarily dispense with whether any of PCB's four garnishment liens may be avoided by the trustee pursuant to his strong-arm powers under § 544(a). Quite simply, none of PCB's garnishment liens can be avoided under § 544(a) because each of the liens arose and became perfected prior to the commencement of the debtor's bankruptcy case. *See infra* pp. 127–30.

### B. *Whether PCB's liens on the checking account and limited partnership interest can be avoided as preferential transfers under § 547(b)?*

The Court also determines rather quickly that PCB's garnishment liens the joint checking account in ESB Bank and the debtor's limited partnership interest are not susceptible to avoidance under § 547(b). PCB's garnishment liens on the joint checking account and the limited partnership interest arose, and were automatically perfected, on May 12, 1997, and May 9, 1997, respectively, since (a) those are the dates upon which the writs of execution were properly served upon ESB Bank and Penn–Dithridge as respective garnishees, (b) a garnishment lien on property susceptible to garnishment arises as of the date upon which a writ of execution is properly served upon the garnishee holding said property, *see supra* pp. 119–20, and (c) a writ of execution that is properly served effects, at

19, 1997, the debtor recognizes that PCB commenced its garnishment action against Fidelity Investments rather than Fidelity Management Trust. *See* PCB's Exhibit 14.

least with respect to personalty, an attachment of the property held by a garnishee, *see Id.*, thereby necessarily also resulting in the immediate perfection of that garnishment lien. Transfers in the form of these two garnishment liens also occurred for preference purposes on May 12, 1997, and May 9, 1997, respectively, because the two liens were perfected, as set forth above, at precisely the same time that they arose, or took effect, between PCB and the debtor. *See* 11 U.S.C.A. §§ 547(e)(2)(A) (West 1998) ("a transfer is made ... at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time [with one exception that is not relevant here]"), 547(e)(1)(B) (West 1993) (perfection of a transfer of personalty occurs when a judgment creditor can no longer obtain a judicial lien superior to that of the transferee). Because transfers in the form of these two garnishment liens occurred for preference purposes on May 12, 1997, and May 9, 1997, respectively, and since both dates precede September 22, 1997, by more than ninety days, this Court must hold that 11 U.S.C. § 547(b)(4)(A) is not satisfied. Therefore, neither garnishment lien may be avoided as a preferential transfer.

## C. *Whether PCB's liens on the debtor's IRA and SEP can be avoided as preferential transfers under § 547(b)?*

The preference analysis with respect to PCB's garnishment liens on the debtor's IRA and SEP, unfortunately, is not nearly as simple as the preceding analysis with respect to the debtor's checking account and limited partnership interest. PCB maintains that its liens on the IRA and SEP were perfected on May 21, 1997, and May 15, 1997, respectively, *see* PCB's Complaint, para. 19–20, which dates coincide with the dates that PCB served, or caused to be served, its writs of execution upon Janus and Fidelity Management Trust (via improperly serving "Fidelity Investments"), respectively. PCB also must maintain, albeit implicitly, that (a) these two liens arose on May 21, 1997, and May 15, 1997, respectively, and (b) the transfers in the form of the liens occurred for preference purposes on precisely the same dates pursuant to § 547(e)(2)(A) since the liens were perfected at the same time that they arose, or took effect, between PCB and the debtor. If PCB is correct, then neither of these garnishment liens constitutes a preferential transfer because May 21, 1997, and May 15, 1997, both precede September 22, 1997, by more than ninety days. However, is PCB correct given that its service of the writs of execution upon Janus and Fidelity Management Trust was, as this Court has already determined, improper in both instances. *See supra* pp. 122–23, 125. The Court thinks not.

 Although, as previously mentioned, a garnishment lien on property—at least personalty—arises and becomes perfected as of the date upon which a writ of execution is properly served upon the garnishee holding said personalty, on what date does such a lien arise and become perfected if service is improper? Obviously, if service of a writ of execution is improper and an objection to such improper service is timely made (ie., the objection is not waived), then a lien will not arise at all on the basis of such service. However, what happens if, as in the instant case, an objection to improper service is waived? After extensive research, this Court concludes that the preceding issue is one of first impression in the state of Pennsylvania. Additionally, little case authority in other states can be found regarding this precise issue. However, the Court has uncovered decisional law in Kentucky to the effect that garnishment liens arise and become perfected, in the event of improper service and a subsequent waiver of an objection to said improper service, as of the date upon which said waiver occurs. *See Minter Homes Corporation v. Harris, et al.*, 243 Ky. 210, 47 S.W.2d 1013, 1014 (Ky.1932); *Gibson, et al. v. Auxier*, 264 S.W.2d 286, 289 (Ky.1953) (citing *Minter Homes* ). This Court agrees with, and believes that the Pennsylvania Supreme Court would adopt, the aforementioned holding of the Kentucky courts. Therefore, this Court holds that PCB's liens on the IRA and SEP are deemed to have arisen, and consequently became perfected, as of the dates upon which objections to the improper ser-

vice upon Janus and Fidelity Management Trust, respectively, were waived.

 Furthermore, even if Pennsylvania's Supreme Court were to hold that a garnisher's lien relates back to, or is deemed to arise and become perfected as of, the date upon which a writ of execution is improperly served after an objection to the improper service is waived, this Court would still be constrained to hold that, pursuant to § 547(e)(1)(B), said garnishment lien is not perfected for preference purposes until the date of such waiver. *See In re Wade,* 219 B.R. 815, 821–22 (8th Cir. BAP 1998) (citing *Fidelity Financial Services, Inc. v. Fink,* 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998), for the proposition that "state perfection law yields to federal preference law where the two are in conflict"). This holding is warranted because, unless such a waiver of improper service occurs, (a) the garnisher will not have a lien on the basis of its improperly-served writ of execution and will be left with having to re-serve the writ in a proper manner to implement the garnishment process, and (b) any lien then ultimately obtained by the garnisher would arise and become perfected as of the date upon which the writ of execution is properly re-served, which means that an intervening judgment creditor would be able to acquire a judicial lien that is superior to that of the garnisher. Therefore, even if PCB's liens on the IRA and SEP are deemed, under Pennsylvania law, to have arisen and become perfected as of the date of PCB's respective defective services upon Janus and Fidelity Management Trust, neither lien became perfected for preference purposes until objections to the respective defective services were waived.

The Court has already determined previously the dates upon which the debtor and the respective garnishees, Janus and Fidelity Management Trust, waived objections to PCB's improper service. With respect to the improper service upon Janus, the debtor waived his objection thereto on June 19, 1997, when he raised his various preliminary objections without any mention of an improper service upon Janus. *See supra* pp. 123–24. However, Janus did not waive its objection to PCB's improper service until June 26, 1997, because (a) that is the date upon which Janus filed its answers to PCB's interrogatories, (b) Janus never filed any preliminary objections to PCB's garnishment action against it, and (c) Janus, as garnishee, had the right to object to PCB's improper service, even though it never did so, provided that it objected preliminarily and its preliminary objection was filed prior to the date upon which it answered PCB's interrogatories. *See supra* pp. 123–24. With respect to the improper service upon Fidelity Management Trust, the debtor also waived his objection thereto on June 19, 1997. *See supra* pp. 126–27. However, Fidelity Management Trust did not waive its objection to PCB's improper service until July 2, 1997, because (a) that is the date upon which Fidelity Management Trust filed its answers to PCB's interrogatories, (b) Fidelity Management Trust never filed any preliminary objections to PCB's garnishment action against it, and (c) Fidelity Management Trust, as garnishee, had the right to timely object to PCB's improper service, which it never did, by so objecting preliminarily and prior to the date upon which it answered PCB's interrogatories. *See Id.* Therefore, objections to the improper service upon Janus and Fidelity Management Trust were finally waived on June 26, 1997, and July 2, 1997, respectively.

Given that June 26, 1997, and July 2, 1997, are the respective dates upon which occurred final waivers regarding objections to the improper service upon Janus and Fidelity Management Trust, (a) PCB's liens on the IRA and SEP must also be deemed to have arisen and simultaneously become perfected on those dates, respectively, and (b) transfers in the form of said liens occurred for preference purposes on the same respective dates, pursuant to § 547(e)(2)(A), since the liens arose, or took effect between the parties, at the same time that they were perfected. Alternatively, even if Pennsylvania law were to dictate that PCB's liens on the IRA and SEP arose and became perfected on May 21, 1997, and May 15, 1997 (ie., the dates of improper service), (a) said liens nevertheless became perfected for preference purposes, in accordance with § 547(e)(1)(B), on June 26, 1997, and July 2, 1997, respectively (ie., the respective dates upon which the pertinent waivers

occurred), and (b) transfers in the form of the two liens were made for preference purposes, pursuant to § 547(e)(2)(B), on the aforementioned perfection dates of June 26, 1997, and July 2, 1997, respectively, since said perfection dates exceed by more than ten (10) days May 21, 1997, and May 15, 1997 (ie., the alleged dates upon which the liens arose or took effect between the parties). *See* 11 U.S.C.A. § 547(e)(2)(B) (West 1993) ("a transfer is made ... at the time such transfer is perfected, if such transfer is perfected after ... 10 days [subsequent to the date upon which the transfer takes effect between the transferor and the transferee]").[17] Because the transfers in the form of PCBs' garnishment liens on the IRA and SEP occurred on June 26, 1997, and July 2, 1997, respectively, regardless of when the two liens are deemed to have become perfected under Pennsylvania law, and because these two dates are both within ninety days of September 22, 1997—eighty-eight (88) days and eighty-two (82) days from September 22, 1997, respectively—both transfers were made within the ninety-day preference period set forth in § 547(b)(4)(A). Since the Court has no reason to conclude that paragraphs (1), (2), (3), and (5) of § 547(b) are not also satisfied with respect to PCB's liens on the IRA and SEP, both liens shall, consequently, be avoided as preferential transfers.

### D. *Summary.*

Therefore, none of PCB's garnishment liens may be avoided under § 544(a). Furthermore, PCB's liens on the debtor's checking account with ESB Bank and the limited partnership interest in Penn–Dithridge may not be avoided as preferential transfers under § 547(b). However, PCB's liens on the debtor's IRA and SEP shall be avoided pursuant to § 547(b) as preferential transfers.

**17.** Moreover, there does not exist for garnishment liens a preference exception similar to that provided in 11 U.S.C. § 547(c)(3) for purchase money security interests (p.m.s.i.) that are perfected on or before twenty (20) days subsequent to the date that the p.m.s.i. takes effect between parties. Therefore, if a garnishment lien is perfected for preference purposes more than ten (10) days subsequent to when it arises, then the transfer in the form of the garnishment lien

### CONCLUSION

In accordance with the above analysis:

(a) PCB obtained and presently possesses garnishment liens on the debtor's joint checking account with ESB Bank, the limited partnership interest in Penn–Dithridge, and the debtor's IRA and SEP;

(b) PCB's liens on the debtor's checking account and the limited partnership interest may not be avoided under either §§ 544(a) or 547(b); and

(c) PCB's liens on the debtor's IRA and SEP, however, shall be avoided pursuant to § 547(b).

Because the debtor has not sought to exempt the limited partnership interest, and has withdrawn his request to exempt the checking account, PCB will retain its liens on said property to the extent of PCB's claims against the debtor. PCB is obviously undersecured with respect to its lien on the checking account since the checking account is only valued at $30.00. On the basis of the evidence that the Court presently has, it would appear that PCB is likely also undersecured with respect to its lien on the limited partnership interest. Although the debtor's bankruptcy schedules do not disclose a value for his limited partnership interest, PCB has provided the Court with some evidence to the effect that the book value of the limited partnership interest equals $20,000.00. *See* PCB's Exhibit B, Attached to PCB's Motion for Summary Judgment (Affidavit of Joseph F. Banco, officer of Mid–Atlantic Properties Corporation, which services Penn–Dithridge). While the fair market value of the limited partnership interest may very well exceed the aforementioned book value, it is highly unlikely that such market value would exceed the amount of PCB's claims against the debtor.[18]

occurs for preference purposes on the date of said perfection.

**18.** Because the debtor probably does not have any equity in the limited partnership interest, abandonment and/or relief from stay will ultimately follow so that PCB can proceed with garnishment of the interest. However, the Court wishes to make clear that it ned not, and thus does not, take a position as to precisely what

With respect to the debtor's IRA and SEP, both of which the debtor has attempted to exempt, the Court has already determined in a separate opinion that the debtor may not exempt:

(a) $1,414.24 in contributions that he made to his IRA prior to 1995, and $36,035.00 in contributions that he made to his SEP prior to 1995;

(b) those contributions that the parties stipulated the debtor may not exempt; and

(c) the appreciation or income that resulted from contributions either determined by this Court, or stipulated by the parties, to be nonexempt, which amount this Court has not yet determined.

*See In re Allen* at 27–30. Whatever else remains in the IRA and SEP the debtor may exempt and retain pursuant to 11 U.S.C. § 522(g).[19] That portion of the two accounts that the debtor may not exempt shall be available for distribution by the trustee to unsecured creditors and must, therefore, be turned over by the debtor to the trustee immediately in accordance with the Court's separate decision as set forth at *In re Allen* at 27–30.[20]

An appropriate order shall be entered.

### ORDER OF COURT

**AND NOW,** this **18th day of December, 1998,** upon consideration of Pennsylvania Capital Bank's (PCB) adversary complaint to determine the validity and extent of garnishment liens which it asserts that it possesses on certain property—an individual retirement account (IRA), a simplified employee pension (SEP), a 3.8% ownership interest in a limited partnership, and an interest in a joint checking account—which comprises a portion of the bankruptcy estate of Robert D. Allen, the debtor in the above-captioned bankruptcy case; as well as in consideration of the responses by the debtor and the Chapter 7 trustee, who are defendants in the above-captioned adversary proceeding, including defendants' contention that PCB's liens, to the extent that they exist, can be avoided by the trustee pursuant to 11 U.S.C. §§ 544(a) and 547(b); and with particular regard for the summary judgment motions filed by each of the parties, the parties' joint stipulation of pertinent facts, and supporting and reply briefs by the parties; and in accordance with the accompanying memorandum opinion of this Court dated **December 18, 1998;** and after notice and a hearing on May 22, 1998, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

1. PCB **OBTAINED** and presently **POSSESSES** garnishment liens on the debtor's joint checking account, the limited partnership interest, and the debtor's IRA and SEP.

2. PCB's liens on the debtor's checking account and the limited partnership interest **CANNOT BE AVOIDED** under either §§ 544(a) or 547(b).

3. PCB's liens on the debtor's IRA and SEP, however, **SHALL BE AVOIDED** pursuant to § 547(b).

4. PCB is **UNDERSECURED** with respect to its lien on the checking account, and appears to also be **UNDERSECURED** with respect to its lien on the limited partnership interest.

5. The portion of the debtor's IRA and SEP which this Court has determined, by separate opinion, that the debtor may not exempt shall be available for distribution

PCB will obtain via garnishment of the limited partnership interest. It will be for the proper state court to determine whether PCB, via said garnishment, (a) can only practically obtain the debtor's share of profits (ie., apparently in the form of an annual distribution), as well as the method by which future profit distributions will be conveyed to PCB if PCB's garnishment effects an attachment of such future profit distributions, or (b) can obtain something more, such as a redemption or forced sale of the limited partnership interest.

**19.** The Court need not ascertain the precise values of the debtor's IRA and SEP since PCB's liens thereon are avoided in their entirety at this time pursuant to § 547(b).

**20.** As set forth in the last paragraph of the Court's separate decision regarding objections to the debtor's exemptions, the trustee, after liquidating either the IRA and/or SEP, must ultimately remit to the debtor an amount that will enable the debtor to personally satisfy in the future any tax and penalty consequences that will result from the trustee's early withdrawal of funds from the IRA and/or SEP. *See In re Allen* at 29–30.

by the trustee to unsecured creditors and must, therefore, be **TURNED OVER** by the debtor to the trustee immediately in accordance with said separate decision. *See Pennsylvania Capital Bank v. Robert D. Allen (In re Allen),* Bankruptcy No. 97–26908, Motion No. NONE (Bankr.W.D.Pa.1998), at 27–30.

6. Whatever else remains in the debtor's IRA and SEP the debtor may **EXEMPT** and **RETAIN** pursuant to 11 U.S.C. § 522(g).